**LEXINGTON–FAYETTE URBAN COUN-
TY GOVERNMENT, Appellant,**

v.

**Daniel Evans MIDDLETON, Appellee.**

Court of Appeals of Kentucky.

June 17, 1977.

Discretionary Review Denied Oct. 3, 1977.

James T. Hodge, Commissioner of Law, Charles D. Weaver, Jr., Director, Div. of Litigation, Richard V. Murphy, Corp. Counsel, Donald D. Waggener, Stephen D. Milner, Asst. Corp. Counsels, Lexington, for appellant.

F. Jerry Anderson, Lexington, for appellee.

Before GANT, HOWERTON and REYNOLDS, JJ.

GANT, Judge.

Lexington-Fayette Urban County Government appeals from a judgment in the Fayette Circuit Court awarding damages to the Appellee in the amount of $3,122.90, consisting of a $1,500.00 verdict by the jury against the Appellant and a police officer employed by the Appellant, together with $1,622.90 awarded by the court against the same parties for attorney's fees and costs incurred by the Appellee in the manner which will be hereinafter set out.

The facts in the case were in considerable dispute. Appellee testified that at approximately 4:30 in the morning of August 28, 1972, he was at the intersection of Liberty Road and Winchester Road in Fayette County, Kentucky; that when the light turned green he proceeded into the intersection intending to turn right, or eastward, on Winchester Road, and that when he was approximately half-way into the intersection two cars approached from his left, running the red light at a high rate of speed and appearing to be racing, thereby forcing him off the road and into a filling station. Appellee further testified that these two cars continued on eastward on Winchester Road, accelerating as a light changed some distance on down the street and that at the intersection of Industry Road and Winchester Road one of the automobiles turned left and parked in a deserted filling station, the

other car proceeding on out Winchester Road.

Appellee testified that the car which turned left and parked was occupied by Officers Gaines and Hargis, and that he pulled into the service station some eight to ten feet from the Hargis vehicle and questioned them about their problem. He testified further than one of the occupants of the Hargis vehicle asked him whether he was a police officer and that he indicated that he was not but that he was a member of the Sheriff's Association and intended to call the police about their racing and running the red light. Appellee further testified that as this dialogue continued he was aware that he "had a problem" decided not to get involved and drove on off, proceeding northward on Industry Road toward New Circle Road. Appellee further testified that as he proceeded on Industry Road another vehicle came behind him, blinking its lights, and that he pulled over. This vehicle turned out to be the car of Officer Bokal, being the vehicle which had proceeded on when the Hargis vehicle stopped at the service station. Both of these vehicles were private vehicles, owned by the police officers, and all three officers were in uniform at the time. Appellee testified that Officer Bokal placed him under arrest for "reckless driving, had been drinking."

Appellee further testified that following this the other two officers, Hargis and Gaines, came upon the scene and that both Officers Hargis and Bokal struck him, grabbed him by the hair, and that Officer Hargis charged him with disorderly conduct and impersonating a peace officer.

Appellee further testified that subsequently a cruiser arrived upon the scene, that he was taken to the Municipal Building, booked on these charges and placed in jail. Further testimony by the Appellee and others was that he had a black eye, blood in that eye and Appellee testified that he had some kidney trouble as a result of the kicking.

Officers Bokal and Hargis testified at the trial and their version was quite different. Officer Bokal testified that it was the Appellee who ran the red light, forcing him to apply his brakes; that he did not see Officer Hargis at the first intersection; that he subsequently saw Appellee's vehicle at the service station with Officer Hargis's car; that he smelled alcohol on Appellee's breath at the time of the arrest; that the arrest was orderly and that any damage to the face of the Appellee was caused when Appellee was shoved against one of the vehicles to be frisked prior to placing him in the cruiser. Officer Hargis testified that he placed the charges of disorderly conduct against the Appellee because of his abusive language and threatening at the time of the arrest and that he further placed charges of impersonating a peace officer, testifying that the Appellee claimed he was a member of the Sheriff's Department, not the Sheriff's Association. Both Hargis and Bokal denied any striking of the Appellee; both denied racing, and both denied running the red light.

This action was brought by the plaintiff-Appellee, Daniel Evans Middleton, against Officers Hargis and Bokal and against the City of Lexington, for which Lexington-Fayette Urban County Government was subsequently substituted. Three general grounds were alleged in the complaint, these being malicious prosecution, assault and battery and false arrest and imprisonment. Only the Appellant, Lexington-Fayette Urban County Government, appeals from the judgment herein, and there is no cross-appeal.

The case was submitted to the jury under instructions consisting of six interrogatories as follows:

INSTRUCTION NO. 1: The Court instructs the jury to answer the following questions.

Question No. 1: Does the jury believe from the evidence in this case that the plaintiff Daniel Evans Middleton drove his automobile in a reckless manner, at or about the intersection of Winchester and Liberty Roads and in the presence of the officer, Edward Bokal, or that the officer Edward Bokal had reasonable grounds to believe and did in good faith believe that the plaintiff did so in his presence?

Answer "yes" or "no".

Question No. 2: Does the jury believe from the evidence in this case that the plaintiff Daniel Evans Middleton committed disorderly conduct in the presence of the officer, Thomas Stephen Hargis, by engaging in violent tumultuous or threatening behavior or making unreasonable noise or in a public place using abusive or obscene language with intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof; or that the officer Thomas Stephen Hargis, had reasonable grounds to believe and did in good faith believe that the plaintiff was so doing in his presence.

Answer "yes" or "no".

Question No. 3: Does the jury believe from the evidence in this case that Officer Edward Bokal used more force than was necessary or appeared to him in the exercise of a reasonable judgment to be necessary, in order to affect (sic) the arrest of the plaintiff.

Answer "yes" or "no."

Question No. 4: Does the jury believe from all of the evidence in the case that Officer Thomas Stephen Hargis used more force than was necessary or appeared to him in the exercise of a reasonable judgment to be necessary in order to affect (sic) the arrest of the plaintiff.

Answer "yes" or "no".

If your answer to either question No. 1 or question No. 2 is "no" or if your answers to either questions No. 3 or question No. 4 is "yes" then proceed to answer question No. 5 and question No. 6.

Question No. 5: The Court instructs the jury that the Officers Edward Bokal and Thomas Stephen Hargis were acting within the scope of their employment as police officers of the City of Lexington, if you believe from the evidence that at the time and place the plaintiff was arrested, they were acting in furtherance of the purposes for which they were employed. If you believe from the evidence that at the time and place the plaintiff was arrested, the said officers, or either of them, were acting to accomplish some private purpose of their own not related to the purposes for which they were employed, then, such officer was not acting within the scope of his employment by the City of Lexington.

Does the jury believe from the evidence in this case that the officer Edward Bokal was acting within the scope of his employment by the City of Lexington at the time he arrested the plaintiff Daniel Evans Middleton?

Answer "yes" or "no".

Does the jury believe from the evidence in this case that the officer Thomas Stephen Hargis was acting within the scope of his employment by the City of Lexington at the time he arrested the plaintiff Daniel Evans Middleton?

Answer "yes" or "no".

Question No. 6: What amount of money does the jury believe from the evidence will fairly and reasonably compensate the plaintiff Daniel Evans Middleton for the mental and physical pain and suffering indured (sic) by the plaintiff to date as a direct and proximate result of the injuries, if any inflicted upon him by the Officer Edward Bokal?

Insert then the amount, if any.

What amount of money does the jury believe from the evidence will fairly and reasonably compensate the plaintiff Daniel Evans Middleton for the mental and physical pain and suffering indured (sic) by the plaintiff to date as a direct and proximate result of the injuries, if any, inflicted upon him by the Officer Thomas Stephen Hargis?

Your total verdict shall not exceed the sum of $30,000.00, the amount claimed in the complaint.

The jury found that neither of the two officers had reasonable grounds to believe nor did they in good faith believe that the Appellee had committed the offense of reckless driving or disorderly conduct; they found that neither of the officers used more force than was necessary or appeared to them to be necessary in order to effect the arrest; they found that both of the officers were acting within the scope of their em-

ployment; and they found damages against each of the two officers in the amount of $1,500.00.

Appellant urges as its first grounds for reversal that the trial court refused to submit to the jury the question of whether the arrest for false impersonation constituted a defense to the entire action. The evidence on this question was rather sparse. Of course, the Appellee denied ever stating that he was a member of the Sheriff's Department, saying that he merely said that he belonged to the Sheriff's Association and was going to call the police. Officer Hargis testified very briefly on this subject that the Appellee "stated he was with the Sheriff's Department" and "that he could put us in jail for speeding." The testimony further was that the Appellee made no effort to get out of his car; made no statement that the officers were under arrest and, in fact, drove off leaving the two officers at the filling station. Hargis further testified that after Bokal had stopped him the Appellee made a further statement that "he could still put us in jail" and "that he was an associate member of the Sheriff's Association of Kentucky."

The applicable section of the statutes urged by the Appellant is *Ky.Rev.Stat.* 434.-060(1)(d), which states as follows:

(1) Any person who fraudulently represents or personates another, and in such assumed character does any of the following acts, shall be confined in the penitentiary for not less than one (1) nor more than five (5) years:

. . . . .

(d) Do any other act in the course of any action, by which the person so personated or represented purports to be made liable, in any event, to the payment of any debt, damages, costs or sum of money, or his rights or interests are in any manner affected.".

■ Appellant urges that the wording of this is broad enough that by representing himself to be a member of the Sheriff's Department in the manner indicated would affect the rights of the Sheriff by subjecting him to damage suits, tainting his repu-

tation, and undermining his standing as an elected official of the community. With this we do not agree, and, although all statutes are ordinarily liberally construed in the Commonwealth of Kentucky, such construction simply cannot be carried this far when applied to the facts of the instant case.

The second ground urged by the Appellant is that the trial court erred in entering its judgment on the basis of an ambiguous and confusing jury verdict in answering these interrogatories. The law concerning false arrest and assault and battery in the course thereof is clearly stated in the case of *City of Lexington v. Gray,* Ky., 499 S.W.2d 72 (1973). This case states as follows:

The burden of establishing justification was on the officer, who therefore had to persuade the jury that he had reasonable grounds to believe and in good faith believed that Mrs. Gray was committing a misdemeanor in his presence *and* that he used no more force than was reasonably necessary, or so appeared to him in the exercise of reasonable judgment, in order to effect the arrest. *Goins v. Hudson,* 246 Ky. 517, 55 S.W.2d 388 (1932).

■ This case went on to set out a model instruction to be used on retrial. It is the opinion of this Court that the interrogatories propounded by Judge Barker in the lower court were far superior to the *Gray* instruction as the *Gray* instruction, standing alone, would seem to place the burden of proof on the defendant when the burden of proof is always on the plaintiff. However, once the plaintiff meets his burden and establishes his case, if the defendant attempts justification of his conduct, then the burden does shift to him to establish *both* that he had reasonable grounds and in good faith did believe those grounds for making the arrest *and* that he used no more force than necessary. The absence of either of these, not both, will make him liable in an action for false arrest and imprisonment and any resulting injury therefrom. In other words, if the officer did

have reasonable grounds for making the arrest but used more force than necessary he would be liable and, if he only used necessary force in effecting the arrest but there were, in fact, no reasonable grounds for the arrest, he will also be liable. The latter example is appropriate in the instant case. The jury held that, although neither of the officers used more force than was necessary in effecting the arrest, they had no reasonable grounds for making the arrest and this clearly renders them liable under the laws of this Commonwealth.

■ Relating to the amount of damages, the Appellee actually furnished two grounds. First, he stated that he was grabbed by the hair, struck in the face, which striking resulted in a black eye and a bloody eye, and he further testified that he was taken in a police cruiser, booked at the Police Department and thrown into jail. This composite clearly justifies the verdict of the jury. In the case of *Louisville & N. R. Co. v. Mason,* 199 Ky. 337, 251 S.W. 184 (1923), we find the following language:

> The only basis for the contention that the verdict is excessive is that there was no evidence that appellee suffered any humiliation, bodily pain, or mental anguish for which the jury allowed $3,000.00, as the instructions authorized them to do.
>
> It is true that the appellee did not, in her testimony, say in so many words that she was humiliated or otherwise hurt, either mentally or physically, as alleged in her petition, by the acts complained of, but such was not only the necessary consequence thereof, but the only reasonable inference from her testimony, and in our judgment this contention is wholly without merit.

■ Thus we find that even in the absence of testimony concerning mental pain and anguish, a verdict may award such mental pain and the interrogatory No. 6 was proper. We also feel that even though the jury held that there was no excessive force used, the Appellee was entitled to be compensated for any physical pain or suffering, as well as "mental pain," as a result

of this arrest and assault because of the fact that there were no reasonable grounds for the arrest itself.

The third and fourth grounds urged by the Appellant for reversal relate to the damages awarded by the jury and the court. As previously indicated, the jury awarded $1,500.00 against both Officer Hargis and Officer Bokal. The court set aside the $1,500.00 awarded against Officer Hargis for reasons which we are unable to ascertain. The testimony was that Hargis hit the Appellee in the mouth and further that Hargis arrested the Appellee and charged him with reckless driving and impersonating an officer. Had the Appellee cross-appealed, the court would feel constrained to reverse the lower court on this point as we feel that there was as much evidence against Officer Hargis as there was against Officer Bokal, but this question is not before us.

Additionally, the sum of $1,622.90 was awarded for attorney's fees and court costs incurred in the defense of the three charges, those being reckless driving, disorderly conduct and impersonating an officer. These expenses were properly proven, being the attorney's fees and cost of transcripts in the lower court, in the amount heretofore set out.

■ The law in Kentucky is probably best set out in the case of *Ross v. Kohler,* 163 Ky. 583, 174 S.W. 36, 41 (1915):

> The rule applying in such cases is that the successful plaintiff is entitled to compensation for all natural and probable consequences of the wrong . . . . .

The Court is not materially assisted by the annotations in 32 Am.Jur.2d *False Imprisonment* or in 35 C.J.S. *False Imprisonment,* as both of these merely indicate that those jurisdictions which have decided this question at all are fairly equally divided. This is a case of first impression in the Commonwealth of Kentucky and there are simply no Kentucky cases which are of material assistance on this problem. Apparently, Florida and Alabama have adopted the rule that they will distinguish between

false arrest and imprisonment and malicious prosecution and have held that damages are recoverable only to the extent that they are expended to secure the party's release from confinement or the illegal restraint. On the other hand, Vermont has held that the actual restraint does not end until the prosecution against him is ended and that expenses incident to the defense of the suit are the natural and proximate result of the wrongful act.

It probably should be pointed out at this juncture that in instances involving officers of the law there is simply no distinction between false arrest and false imprisonment. False imprisonment is always the result of a false arrest, since the individual is placed under restraint by the false arrest and there can be no imprisonment without arrest by a peace officer. The reference books have even abandoned a separate title for False Arrest and all of these cases are indexed under False Imprisonment.

It seems to this Court that retaining an attorney and acquiring a transcript of the proceedings for the purpose of defense or appeal are "natural and probable consequences of the wrong." The fact that the person wronged is actually released from jail by posting a bond or even by a recognizance does not end his problems, as he must sooner or later clear himself of the false charges placed against him and he is under some restraint from his movements as he is answerable to summons of the court and required to appear in court on the trial date for the purpose of exoneration. It is therefore the holding of this Court that reasonable attorney's fees and costs incurred in defending himself from the wrongful charges are natural and probable consequences of the wrong and recoverable in a civil action for false arrest where there is a finding that the false arrest and imprisonment were without reasonable grounds. We would not award such damages in those cases where reasonable grounds did exist but excessive force was used. In the former case, the wrong was the arrest and imprisonment without reasonable grounds and this wrong is the basis of the action. In the latter, the wrong was the assault and battery committed by the arresting officer, even though he had reasonable grounds.

The last ground for reversal urged by the Appellant is that Lexington-Fayette Urban County Government should not be held liable for the false arrest and damages resulting therefrom. We are mindful of the language contained in *City of Louisville v. Louisville Seed Company*, Ky., 433 S.W.2d 638, 641 (1968), in which the court said:

> With rare exceptions, private business carries on no function as hazardous or exacting in detail as the work of a city fire or police department. These activities are so inherently dangerous that private business would hesitate to undertake them. . . . And it can be readily appreciated that the imposition of broad standards of tort liability upon them might be extremely burdensome and could possibly force their curtailment or even abandonment to the detriment of the general public. For this reason some reasonable compromise must be reached—one that will permit the isolated citizen to recover for grievous injustices imposed upon him by a negligent society, yet protect that society from what could culminate into ruinous claims.

Appellant points out that in the cases of *City of Lexington v. Yank*, Ky., 431 S.W.2d 892 (1968), and *City of Lexington v. Gray*, *supra*, the court has held the city liable for assaults by police officers. Appellant seeks to distinguish the instant case by saying that in those cases there was an intentional and wrongful assault and that in this case there was a "good faith" determination to arrest in carrying out the public safety function of law enforcement. However, the jury held to the contrary and held in this case that there was not a good faith determination to arrest. For this reason, we feel that those cases are indistinguishable and that where there was a lack of reasonable grounds for making an arrest the city must suffer the damages.

It has long been held in regard to the liability of the master for the action of his

servant that the doctrine is founded upon the principle of agency. This doctrine is probably best set out in the case of *Continental Ins. Co. of New York v. Buchanan*, Ky., 108 S.W. 355 (1908), in which the court said:

> Where one of two parties must suffer, he should bear the loss who sends out the agent, rather than he who innocently deals with him.

This seems particularly appropriate in the case of police officers. The Lexington-Fayette Urban County Government has adequate opportunity for screening those persons whom it hires as police officers for this government. These persons can be given tests, evaluated by psychiatrists, subjected to polygraph examinations, reviewed by boards, and their records of performance are subject to scrutiny from time to time by the employer. The public which deals with these police officers has no such opportunity.

For the reasons above stated, the case is affirmed.

All concur.