**Tracey J. DUNN, Appellant**

v.

**Todd FELTY, Appellee.**

No. 2005–SC–000295–DG.

Supreme Court of Kentucky.

June 21, 2007.

Thomas E. Clay, P.S.C., Garry R. Adams, Jr., Clay, Kenealy, Wagner & Adams, PLLC, Louisville, Counsel for Appellant.

Lisa A. Schweickart, Assistant County Attorney, Louisville, Counsel for Appellee.

Opinion of the Court by Justice McANULTY.

This appeal involves an issue of first impression in Kentucky: when does the statute of limitations begin to run against an arrestee's claim for false imprisonment or false arrest? The trial court dismissed Tracey J. Dunn's claim of false imprisonment on the basis that it was barred by the applicable statute of limitations because Dunn filed his lawsuit more than a year after the arrest. The Court of Appeals affirmed. Because we conclude that the prevailing view among the jurisdictions—which is that the statute of limitations begins to run against an action for false imprisonment or false arrest when the alleged false imprisonment ends—is the proper approach, we affirm.

A related issue in this case is: when does the statute of limitations begin to run against an arrestee's claim for excessive force? In addition to Dunn's claim of false imprisonment, the trial court dismissed his claim of excessive force because it was filed more than a year after the arrest. We conclude that the statute of limitations on this claim begins to run at the time of arrest. Thus, we affirm on this issue as well.

## I. Background

### A. Facts underlying Dunn's claims of false imprisonment and excessive force

The following statement of facts is based on the testimony at trial, viewed in the light most favorable to Dunn.

Dunn alleges that on November 7, 1999, he and his wife were asleep in their bed and the sound of neighbors arguing awoke them in the early morning. He looked outside his window and noticed that police cars were outside his condominium complex. Fearing that something had happened to his teenage step-daughter who was spending the night with a friend, he went outside to intercept the police officers. In so doing, he was only half-dressed, wearing sweatpants and flip-flops and a short-sleeved shirt pulled up on his arms but not yet pulled over his head.

Upon leaving his condominium, Dunn noticed a police officer, Officer Todd Felty, running up the stairwell toward him. Dunn alleges that he asked Officer Felty if he was there about his step-daughter when, without provocation, Officer Felty lost his composure and pulled the shirt, which Dunn was still in the process of putting on, off of Dunn's arms. At that point, Dunn stated to Officer Felty that he was going back inside and turned to leave, but Officer Felty grabbed Dunn's pants, causing Dunn to lose his balance. Officer Felty then charged Dunn into a wall, pinned him against it, choking him, and struck Dunn on the leg two times with his flashlight. Another officer eventually arrived and assisted Officer Felty in handcuffing Dunn. And two other officers who were at the scene conducted an investigation on the original reason for police dispatch, which was alleged domestic violence in Dunn's condominium called in by a downstairs neighbor.

Officer Felty placed Dunn under arrest. Dunn remained in custody until the early evening of November 7, 1999, when he was released on bail. His arraignment occurred the following day, November 8, 1999.

As a result of Officer Felty's use of force in the arrest, Dunn stated that he experienced pain in his wrists because the handcuffs were too tight, extensive bruising on his thigh from the flashlight strikes and pain in his neck.

## B. Procedural history

Dunn was charged with harassment, menacing and resisting arrest. At Dunn's arraignment on November 8, 1999, he entered a plea of "not guilty" to the charges, and the case against Dunn proceeded to trial. On April 24, 2000, a Jefferson District Court jury acquitted Dunn on the menacing and resisting arrest charges. And the district court directed a verdict of acquittal on the harassment charge.

Dunn filed a complaint on April 4, 2001, against the City of Louisville, Officer Felty and the three other officers involved in his arrest. In his complaint, he asserted claims of (1) false imprisonment, (2) excessive force, (3) malicious prosecution, (4) outrageous conduct, and (5) failure to train and supervise. Upon motion of the defendants, the trial court ultimately dismissed the false imprisonment, excessive force and failure to supervise and train claims on the basis that the statute of limitations had run. In addition, the trial court granted the defendants' motion for summary judgment on the outrageous conduct claim, and dismissed all officers except Felty as parties to the action. As to the remaining parties to the lawsuit, the City and Officer Felty, a jury returned a verdict in their favor on the malicious prosecution claim.

Dunn did not appeal from the adverse jury verdict. He did appeal, however, the trial court's order dismissing the false imprisonment, excessive force and failure to train and supervise claims. As to the claim against the City for failure to supervise and train, however, he only named Officer Felty as a party to the appeal;

therefore, the Court of Appeals concluded that that claim was not before that court.

On the issue of when the statute of limitations begins to run on a cause of action for false arrest and excessive force, the Court of Appeals noted that the parties agreed that an action for false imprisonment and excessive force must be brought within one year. *See* KRS 413.140(1)(a),(c). The Court of Appeals concluded that the statute of limitations begins to run on the date of arrest or, at the latest, at the time of termination of imprisonment. Thus, the Court of Appeals affirmed the order of the Jefferson Circuit Court. This Court granted discretionary review on the issues of when the statute of limitations begins to run on the claims of false arrest and excessive force.

## II. Statute of limitations on false imprisonment claim

■ As observed by the Court of Appeals, the parties agree that the applicable statute of limitations on both the false imprisonment and the excessive force claims is one year as provided by KRS 413.140(1)(a),(c). Those provisions are as follows:

> (1) The following actions shall be commenced within one (1) year after the cause of action accrued:
>
> (a) An action for an injury to the person of the plaintiff, or of her husband, his wife, child, ward, apprentice, or servant;
>
> . . .
>
> (c) An action for malicious prosecution, conspiracy, arrest, seduction, criminal conversation, or breach of promise of marriage;

To answer the question of when the statute of limitations begins to run—or, keeping with the language of KRS 413.140(1), when the cause of action ac-

crued—against an arrestee's claim for false imprisonment or false arrest, we turn to the elements of the tort. False imprisonment is the intentional confinement or instigation of confinement of a plaintiff of which confinement the plaintiff is aware at the time. *See* Dan B. Dobbs, The Law of Torts § 36, p. 67 (2000). And "[f]alse arrest is a term that describes the setting for false imprisonment when it is committed by an officer or by one who claims the power to make an arrest." *Id.*

From this point forward, realizing that every confinement of a person is an imprisonment, whether it occurs in a prison or a house, we shall refer to the torts of false imprisonment and false arrest together as false imprisonment.

A law enforcement officer is liable for false imprisonment unless he or she enjoys a privilege or immunity to detain an individual. *See id.* § 37, p. 69. Two common examples of a law enforcement officer's privilege to detain an individual are (1) an arrest pursuant to a warrant or (2) an arrest without a warrant in which the officer has "probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it." *Id.* § 83, p. 195; *see also id.* at § 36, p. 69; *Lexington–Fayette Urban Co. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky.App.1977) (holding that the "wrong" to be remedied in a case of false imprisonment is the arrest and imprisonment without reasonable grounds). The common element of both examples is that the detention was lawful as it occurred pursuant to legal process. In the case of false imprisonment, however, the common law, or the statutory law in some states, provides a remedy for a plaintiff's unlawful detention—that is, detention without legal process. *See Wallace v. Kato*, —— U.S. ——, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007) (citing W. Keeton, D. Dobbs, R.

Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 11, p. 54, § 119, pp. 885–886 (5th ed.1984)) and borrowing from the tort of false imprisonment to determine the accrual date on an action brought under 42 U.S.C.A. Section 1983 seeking damages from an unlawful arrest); *see also Williams v. Smith*, 179 Ga.App. 712, 348 S.E.2d 50, 52 (Ga.App.1986) (applying Georgia statutory law, which defines false imprisonment as the "unlawful detention of the person of another").

Turning from the elements of the tort of false imprisonment to the running of the statute of limitations on a false imprisonment claim, the United States Supreme Court recently provided persuasive guidance on the issue in *Wallace*.

In *Wallace*, the Supreme Court decided the issue of whether a suit was timely filed under § 1983, which sought damages for an arrest that violated the Fourth Amendment. *See id.* at 1094. While the Court looked to state law (Illinois) for the length of the statute of limitations (two years), it looked to common-law tort principles to determine the accrual date of the § 1983 cause of action. *See id.* at 1094–95. The Court reasoned that the cause of action most analogous to the claim before it was false imprisonment. *See id.* at 1095. The Court held that a lawsuit filed nine years after the plaintiff's arrest but less than one year after prosecutors dropped the charges against him was not timely filed, even taking into account plaintiff's minority (15 years of age) at the time of the arrest. *See id.* at 1096–97. Instead, the Court concluded that the statute of limitations on plaintiff's § 1983 claim commenced to run when he appeared before the examining magistrate and was bound over for trial. *See id.* at 1097.

In determining the beginning of the limitations period in the case, the Court reasoned as follows:

The running of the statute of limitations on false imprisonment is subject to a distinctive rule—dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: "Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." 2 H. Wood, Limitation of Actions § 187d(4), p. 878 (4th rev.ed.1916); see also 4 Restatement (Second) of Torts § 899, Comment c (1977); A. Underhill, Principles of Law of Torts 202 (1881). Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner's false imprisonment came to an end.

Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*-when, for example, he is bound over by a magistrate or arraigned on charges. Dobbs, *supra,* § 39, at 74, n. 2; Keeton, *supra,* § 119, at 888; H. Stephen, Actions for Malicious Prosecution 120–123 (1888). Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process. Keeton, *supra,* § 119, at 885–886; see 1 F. Harper, F. James, & O. Gray, Law of Torts § 3.9, p. 3:36 (3d ed.1996); 7 Speiser, *supra,* § 27:2, at 943–945. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Keeton, *supra,* § 119, at 888; see also *Heck, supra,* at 484, 114

S.Ct. 2364; 8 Speiser, *supra,* § 28:15, at 80.

*Id.* at 1095–96 (emphasis in original and internal footnotes omitted).

The Court's reasoning and conclusion in *Wallace* are in accord with the general rule on the subject. *See, e.g., Belflower v. Blackshere,* 281 P.2d 423, 425 (Okl.1955) (holding that a cause of action for illegal arrest and false imprisonment accrued at the time plaintiff was released from his alleged illegal restraint and not when the proceedings by which his arrest occurred terminated; therefore, under one year statute of limitations, lawsuit filed more than one year after plaintiff's alleged illegal restraint was time-barred); *see also* M.C. Dransfield, Annotation, *When statute of limitations begins to run against action for false imprisonment of false arrest,* 49 A.L.R.2d 922 (1956 & 2007 Supp.) (The general rule on the subject is that limitations begin to run from the termination of the imprisonment and not from the time when the proceedings under which the plaintiff's arrest occurred ended.).

Guided by the Court's review and analysis of the authorities in *Wallace,* as well as the authorities cited above, we conclude that Dunn's false imprisonment ended when he became held pursuant to legal process. And that date was November 8, 1999, when he was arraigned on the charges. Based on the elements of false imprisonment, he had a complete cause of action at that point. In contrast to the tort of malicious prosecution, favorable termination of criminal proceedings is not an element of false imprisonment. Thus, Dunn did not need to wait. As he filed his lawsuit on April 4, 2001, more than 17 months after the cause of action accrued, the trial court was correct in concluding that his action was time-barred by the one year statute of limitations.

In contrast, Dunn's action for the distinct tort of malicious prosecution was not

time-barred. While not an issue in this case, it further illustrates the point at which false imprisonment terminates and malicious prosecution begins and eventually accrues. The alleged malicious prosecution began at Dunn's arraignment, when he was held pursuant to legal process, and accrued upon a favorable termination of the criminal proceedings against him.

Dunn argues that the proper starting point for the statute of limitations in this case was the date of dismissal of criminal charges. In so arguing, Dunn relies on a case from the United States Court of Appeals for the Sixth Circuit, *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 397 (6th Cir. 1999), which held that Shamaeizadeh's cause of action under § 1983 for an alleged unconstitutional search and seizure did not accrue until the charges against him were dismissed. In so holding, the court in *Shamaeizadeh* relied on the following language from the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486–487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994):

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at 486–487, (footnote omitted).

However, *Wallace* foreclosed Dunn's arguments above that are based on *Sha-maeizadeh* and *Heck*. *Wallace* clarifies that "the *Heck* rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has *not* been ... invalidated,' that is to say, an 'outstanding criminal judgment.'" *Id.* at 1097–1098. *See Watts v. Epps*, 475 F.Supp.2d 1367 (N.D.Ga.2007) (calling into question the holdings in *Shamaeizadeh*, *Smith v. Holtz*, 87 F.3d 108 (3d Cir.1996) and *Covington v. City of New York*, 171 F.3d 117 (2d Cir.1999) and holding that "the Supreme Court's decision in *Wallace* makes clear that tolling under *Heck* does not apply in the pre-conviction context."). In this case, Dunn filed a false imprisonment claim under state law, not a § 1983 claim based on an outstanding criminal judgment. Thus, *Heck* has no application here. Instead, the accepted view on the accrual date of a cause of action for false imprisonment, as discussed above, applies.

Essentially, Dunn's argument, to the extent that it is based on *Heck*, is that an action, like false imprisonment, which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside. *See Wallace*, 127 S.Ct. at 1098 ("What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck*: that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside."). The Supreme Court rejected such an argument and held, in response, that the Court was not disposed to embrace this extension of *Heck* because it is possible that an anticipated future conviction may never occur due to acquittal or dismissal or a refusal to prosecute. *Id.* at 1098. Instead, the Court held:

> If a plaintiff files a false arrest claim before he has been convicted (or files

any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Id.* (internal citations omitted).

This is the very practice adopted by the Kentucky Court of Appeals in its opinion. We agree that this is the better practice, even though it may result in a system of stays and dismissals. A municipality has a strong interest in receiving timely notice of alleged misconduct by its agents, and a plaintiff has a strong interest in prosecuting his or her action for false imprisonment while the memories of the parties and any witnesses are fresh.

### III. Statute of limitations on excessive force claim

 In the context of an arrest, an officer is liable for excessive force in two circumstances: (1) he or she has reasonable grounds for making the arrest but used more force than was necessary; and (2) he or she only used necessary force in effecting the arrest but there were, in fact, no reasonable grounds for the arrest. *See Lexington–Fayette Urban Co. Gov't,* 555 S.W.2d at 618–19. Similar to an assault and battery claim, the cause of action accrues at the time of injury. *See* KRS 413.140(1)(a). In this case, the time of injury was Dunn's arrest on November 7, 1999. Thus, his claim of excessive force filed more than one year after the arrest was not timely.

Dunn does not make any specific argument relative to his excessive force claim. To the extent he argues that *Shamaeizadeh* and *Heck* are applicable to this claim as well, *Wallace* instructs that they are not. The proper course in this case would be to file the civil lawsuit, which the trial court would likely hold in abeyance pending the resolution of any criminal charges.

### IV. Conclusion

The statute of limitations on a false imprisonment claim stemming from an arrest, where the arrest is followed by criminal proceedings, begins to run at the time the plaintiff becomes detained pursuant to legal process. Since in the present case this occurred more than one year before the complaint was filed, the suit was not timely.

The statute of limitations on an excessive force claim stemming from an arrest begins to run at the time of the arrest. Since in the present case this occurred more than one year before the complaint was filed, the suit was not timely.

Accordingly, we affirm the Court of Appeals.

All sitting. All concur.