NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Case No. 17-6476

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 30, 2018

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MAKI JUILLERAT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| OFFICER GREG MUDD, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| UNITED STATES OF AMERICA; | ) | |
| LOUISVILLE METROPOLITAN POLICE | ) | |
| DEPARTMENT; CHIEF STEVE CONRAD; | ) | |
| UNKNOWN POLICE OFFICERS OF | ) | |
| LOUISVILLE METROPOLITAN POLICE; | ) | |
| LOUISVILLE METROPOLITAN/ | ) | |
| JEFFERSON COUNTY GOVERNMENT; | ) | |
| HON. GREG FISCHER, in his official | ) | |
| capacity as Mayor, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: SUTTON, McKEAGUE, and DONALD, Circuit Judges.

SUTTON, Circuit Judge. Greg Mudd, a Louisville Police Officer, stopped Maki Juillerat, a U.S. Army veteran, for driving on the wrong side of the road. Days later, Juillerat told his Veterans Affairs therapist that he had fleeting thoughts of shooting the officer. Officer Mudd found out and filed a criminal complaint. After the police arrested Juillerat, he sued Mudd (and others) for false arrest and other state-law torts. The district court granted summary judgment to

Mudd. Because the false arrest claim fails as a matter of law and because Juillerat has not preserved any other claims against Mudd, we affirm.

## I.

Maki Juillerat was driving home from the grocery store. Up ahead he noticed a semi truck stuck under a low railroad crossing. A police officer, Greg Mudd, had parked his car next to the truck and sat inside. So Juillerat drove around them. That didn't sit well with Officer Mudd. He flagged Juillerat down and cited him for driving on the wrong side of the road and disregarding the officer's attempt to stop traffic.

One month later, Juillerat sought treatment for post-traumatic stress disorder from Dr. Mary Sweeney at Louisville's Veterans Affairs hospital. Dr. Sweeney noted that Juillerat "reported both suicidal and homicidal ideation" and had these "risk factors":

> The [patient] also reported "he already hates cops" and he recently was ticketed by a cop named Officer Mudd. The [patient] said he thought about shooting the cop because he viewed him as unfair and inconsistent. He hasn't planned it out any further than thinking of shooting him but has to go to court on April 2 [for the traffic citation].

R. 60-4 at 3. Because Juillerat promised to "call 911 or go to [the] ER if he thinks he can't control his impulses," Dr. Sweeney did not contact the police and asked Juillerat to return for another assessment in four weeks. *Id.*

On March 27, 2015, hospital employees discussed Sweeney's notes at a staff meeting. One employee, Sonny Hatfield, felt obligated to report the risk to Mudd. By email, he notified the Louisville police that "an Officer Mudd was threatened 'to be shot' by a patient at the VA. The person in question is Maki James Juillerat." R. 60-9 at 1. Three hours later, Dr. Sweeney replied "all" to Hatfield's email: Juillerat "had 'no intentions' of actually hurting the officer," she said. *Id.* "I did not and do not view him as an imminent risk" to anyone, she added. *Id.* But by then

Louisville Police already had shared Hatfield's threat-bearing email with Mudd. Another officer, Jermeco Boleyjack, investigated the perceived threat.

Days later, Mudd asked Boleyjack for an update on the investigation. Boleyjack replied that he had spoken with a VA doctor who said that Juillerat did not pose a threat. On March 31, 2015, Boleyjack closed the investigation. Apparently not comforted in full by these updates, Mudd filed a criminal complaint on April 3, 2015. He stated that Juillerat told Dr. Sweeney "that he had thought about shooting Officer Mudd," but he did not mention the doctor's belief that Juillerat was not a threat. R. 76-3 at 1.

Based on Mudd's complaint, prosecutors sought a warrant to arrest Juillerat for third degree terroristic threatening. *See* Ky. Rev. Stat. Ann. § 508.080. A Jefferson County District Court judge signed the arrest warrant that same day. Warrant in hand, officers arrested Juillerat. Mudd did not accompany the arresting officers. Juillerat spent ten days in jail before the court released him and dismissed the charges.

In response to all of this, Juillerat sued Officer Mudd, VA hospital employees, the Louisville Police Department, and the local government for various state torts. Based on the claims against the VA defendants, the United States removed the case to the U.S. District Court for the Western District of Kentucky. The court granted the municipality defendants' motions to dismiss. It later granted (for the most part) the remaining defendants' motions for summary judgment.

## II.

Much of the lower court's judgment is no longer contested. To refresh: The court granted summary judgment in favor of the three individual defendants. Juillerat challenges that ruling only as to Officer Mudd, not as to Police Chief Steve Conrad or the United States. In granting summary judgment to Officer Mudd, the district court rejected five claims. Juillerat challenges only the

false arrest ruling and has thrown overboard the negligence, gross negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress claims. What's left after this whittling down? One claim (false arrest) against one defendant (Mudd). *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 893 (6th Cir. 2006).

"False arrest" generally refers to a police officer's false imprisonment of an individual. *Lexington-Fayette Urban Cty. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. Ct. App. 1977). A claim of false arrest under Kentucky law prompts two questions: Did the defendant intentionally cause a person to be confined? And does the defendant have a legitimate explanation, an affirmative defense if you will, that entitled him to confine that person? *See Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007); Restatement (Second) of Torts § 35; Dan B. Dobbs et al., The Law of Torts § 41 (2d ed. 2017).

Juillerat has a good answer to the first question. Officer Mudd is not off the hook just because he did not arrest Juillerat. In Kentucky (and elsewhere), a defendant may be liable for *indirectly* causing a person to be confined, including by causing someone else to make the arrest. *See Dunn*, 226 S.W.3d at 71; Restatement (Second) of Torts § 45A. Although individuals do not instigate an arrest whenever they report a crime to police, they may do so if they take certain steps to persuade officers to make an arrest. *See, e.g.*, *Forgie-Buccioni v. Hannaford Bros., Inc.*, 413 F.3d 175, 179–80 (1st Cir. 2005) (store manager was liable under New Hampshire tort law where he showed police incomplete video footage to induce a customer's arrest). In this instance, there is at least a factual dispute about Mudd's role in the decision to arrest Juillerat and about whether he misled prosecutors along the way.

Even so, Juillerat's claim falters at the second question. In Kentucky, an officer may lawfully confine a person if he does so "pursuant to legal process." *Dunn*, 226 S.W.3d at 71. That

includes arresting a person with a warrant. *Id.* And that is what happened here. Officers had a warrant when they arrested Juillerat. And that warrant was facially valid. *See* Restatement (Second) of Torts §§ 122–23. To all appearances, the Jefferson County District Court signed and issued the warrant in its regular form. And it had authority over the conduct described in the criminal complaint. *See* Ky. Rev. Stat. Ann. §§ 24A.110 (Kentucky district courts have jurisdiction over misdemeanors), 508.080(2) (third degree terroristic threatening is a misdemeanor). All told, this satisfies the "legal process" requirement.

Juillerat counters that the legal process was defective. The court issued the warrant, he says, because Officer Mudd omitted information from his criminal complaint that would have shown that Juillerat did not pose a threat. Because the warrant lacked probable cause, as a judge later determined, there was no authority to arrest him. But that blurs the "distinction between the actions of false arrest or imprisonment and malicious prosecution." *Rader v. Parks*, 258 S.W.2d 728, 729 (Ky. 1953). The Kentucky High Court put the point aptly more than 100 years ago:

> There is a well-marked distinction between [the two torts]. An action for false imprisonment may be maintained where the imprisonment is without legal authority. But, where there is a valid or apparently valid power to arrest, the remedy is by an action for malicious prosecution. The want of lawful authority is an essential element in an action for false imprisonment. Malice and want of probable cause are the essentials in an action for malicious prosecution.

*Roberts v. Thomas*, 121 S.W. 961, 962 (Ky. 1909). The *absence* of legal process is "distinct" from the "*wrongful institution* of legal process." *Wallace v. Kato*, 549 U.S. 384, 390 (2007).

Juillerat's argument proves only that he might have raised different claims. Had he filed a malicious prosecution claim, he might have been able to argue that Officer Mudd "conceal[ed] material facts in his sworn criminal complaint." *Garcia v. Whitaker*, 400 S.W.3d 270, 275–76 (Ky. 2013); *see* Restatement (Second) of Torts § 653. Or he might have brought a § 1983 claim for unreasonable seizure under the Fourth Amendment. Regardless of whether such a claim more

closely resembles false arrest, *see Wallace*, 549 U.S. at 388–90 & n.2, or malicious prosecution, *see Manuel v. City of Joliet*, 137 S. Ct. 911, 921 (2017), the analysis would focus on whether officers had probable cause to arrest him. Having done neither and having raised a claim that fails as a matter of law, he has no recourse.

We affirm.