RENDERED:  APRIL 1, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1058-MR

JEROME RENDER; GEORGE
MOZEE; GREGORY PEYTON; AND
NAOMI WEST AS PARENT AND
NEXT FRIEND OF JOSHUA FLOYD                          APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 10-CI-001183


CRYSTAL MARLOWE                                         APPELLEE

AND


NO. 2019-CA-1682-MR

CRYSTAL MARLOWE                                        APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 10-CI-001183


TIFFANY WASHINGTON                                      APPELLEE

<u>OPINION</u>
<u>AFFIRMING IN PART, REVERSING IN PART,</u>
<u>AND VACATING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE:  ACREE, DIXON, AND McNEILL, JUDGES.

McNEILL, JUDGE:  The underlying cases involve numerous claims and plaintiffs.

Case No. 2019-CA-1058-MR involves an appeal by Appellants, Jerome Render

(Render), George Mozee (Mozee), Gregory Peyton (Peyton), and Naomi West, as

parent and next friend of Joshua Floyd (Floyd).  Case No. 2019-CA-1682-MR is an

appeal from a jury verdict in favor of Appellee, Tiffany Washington (Washington).

Both cases arise from claims filed against former Louisville Metro Police

Detective, Crystal Marlowe (Marlowe).  Because we are reversing and vacating the

judgment in Washington's case, we will begin there.

### **Appeal No. 2019-CA-1682-MR – Washington**

There is an appellate record here that is necessary to cite at length in

order to appropriately convey the factual and procedural foundation memorialized

by a previous panel of this Court:

> On December 22, 2007, three armed suspects (two
> males and one female) entered the home of Abbey
> Schmitt.  The three suspects demanded money and
> assaulted Schmitt and her boyfriend, Robert Hayes.
> Schmitt reported to responding officers that the female
> suspect was African-American, "20-24 years of age,
> 5'7", 130 pounds, thin build, and with a short black
> afro."  Marlowe's Brief at 7.  Schmitt also reported that

one of the male suspects referred to the female suspect as "Nikki." Marlowe was assigned to investigate the robbery.

University of Louisville's campus police investigated a similar robbery near Schmitt's home. Campus police presented a photo-pack to the victim of the similar robbery, and she identified Vaughn Carter as one of the male suspects. Carter was arrested, and Marlowe interviewed Carter. Upon questioning, Carter apparently acknowledged knowing a woman that went by the nickname of "Nikki." According to Marlowe, Carter identified Tiffany Washington as "Nikki" and reported that she worked at the University of Louisville's campus library.

Marlowe subsequently compiled a photo-pack containing Washington's photo. Marlowe utilized Washington's driver's license photograph and placed it in a photo-pack with five other female mug-shot photographs. The driver's license photograph used in the photo-pack depicted Washington as having straight shoulder-length hair. Also, Washington's driver's license photograph had a light blue background while the other mug shot photographs had a dark colored background.

. . .

Washington was arrested and remained incarcerated for approximately five days until she posted bail. The grand jury declined to indict Washington after hearing alibi evidence that Washington was in Henderson, Kentucky, on the day of the crime.

. . .

The circuit court did not address whether Marlowe possessed probable cause to obtain an arrest warrant for Washington in its summary judgment. Considering the

-3-

> factual complexity and the current posture of this case, we reverse upon this issue and remand for the circuit court to determine whether Marlowe possessed probable cause to obtain an arrest warrant for Washington and if so, whether Marlowe acted in good faith and was entitled to qualified official immunity.

*Washington v. Marlowe*, No. 2013-CA-001500-MR, 2017 WL 5045614, at *12-15 (Ky. App. Nov. 3, 2017) (hereafter "*Marlowe I*"). During the pendency of *Marlowe I*, the Kentucky Supreme Court rendered *Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016) (holding that qualified official immunity does not shield a police officer from a malicious prosecution claim).

On remand, the trial court again considered Marlowe's motion for summary judgment in light of the Court's holding in *Marlowe I*. Ultimately, the court denied Marlowe summary judgment as to Washington's claims. The case was tried in the fall of 2019 during which Marlowe moved for a directed verdict, which was granted in part and denied in part. A Jefferson Circuit Court jury ultimately found in favor of Washington on the counts of malicious prosecution and abuse of process. The jury awarded her a total of $2,250,000.00 in damages, including $250,000.00 in punitive damages. Marlowe now appeals to this Court as a matter of right. She primarily argues that the trial court erred in denying her motion for summary judgment and in denying her motion for a directed verdict.

-4-

# STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. The Kentucky Supreme Court further explained this summary judgment standard in *Steelvest, Inc. v. Scansteel Service Center, Inc.*:

> While it has been recognized that summary judgment is designed to expedite the disposition of cases and avoid unnecessary trials when no genuine issues of material fact are raised, . . . this Court has also repeatedly admonished that the rule is to be cautiously applied. The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact. The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. It clearly is not the purpose of the summary judgment rule, as we have often declared, to cut litigants off from their right of trial if they have issues to try.

807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). We review the trial court's decision on a motion for a directed verdict for an abuse of discretion. *Exantus v.*

---

[1] Kentucky Rules of Civil Procedure.

*Commonwealth*, 612 S.W.3d 871, 887 (Ky. 2020). With these standards in mind, we turn to the applicable law and the facts of the present case.

## ARGUMENT

Marlowe's sole argument on appeal underlying the denial of her dispositive motions is that Washington's malicious prosecution and abuse of process claims are barred by the one-year statute of limitation (SOL). KRS[2] 413.140. That issue was not discussed in *Marlowe I*, although it appears that the trial court addressed the matter in its initial order denying summary judgment. At issue here, however, is Marlowe's appeal from the trial court's order denying summary judgment entered on June 20, 2019 and the motion for a directed verdict at trial. However, "once the trial begins, the underlying purpose of the summary judgment expires and all matters of fact and law procedurally merge into the trial phase, subject to in-trial motions for directed verdict or dismissal and post-judgment motions for new trial and/or judgment notwithstanding the verdict." *Transportation Cabinet, Bureau of Highways, Commonwealth of Kentucky v. Leneave*, 751 S.W.2d 36, 38 (Ky. App. 1988). *See also Ortiz v. Jordan*, 562 U.S. 180, 183-84, 131 S. Ct. 884, 888-89, 178 L. Ed. 2d 703 (2011). Because this case

---

[2] Kentucky Revised Statutes.

was tried and Marlowe requested a directed verdict, we need not address Marlowe's argument concerning the denial of her motion for summary judgment.

## A. Denial of Directed Verdict

Washington was arrested on April 17, 2008 and her incarceration ended on April 22, 2008. The grand jury declined to indict Washington after hearing alibi evidence that Washington was in Henderson, Kentucky, on the day of the crime. In her brief on appeal, Washington submits that her criminal case was dismissed on May 19, 2008. She filed her complaint in the present case on February 19, 2010. As previously stated, there is a one-year SOL for malicious prosecution and abuse of process claims. In order to establish an action for malicious prosecution, a plaintiff must demonstrate:

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;

2) the defendant acted without probable cause;

3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;

4) **the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought**; and

5) the plaintiff suffered damages as a result of the
proceeding.

*Martin*, 507 S.W.3d at 11-12 (emphasis added).

Marlowe's SOL argument is premised in part on the syllogism that because the trial court directed a verdict as to Washington's claims for false imprisonment, assault, and battery, the court should have done so concerning the malicious prosecution charge. Although this argument is underdeveloped, the general assertion is correct in that these claims are ripe for litigation at the time of their accrual, and are not tolled pursuant to the "discovery" rule. *See Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 56 (Ky. 2010):

> We also refuse to extend application of the discovery rule to cases not involving latent injuries, latent illnesses, or professional malpractice and conclude that the Court of Appeals erred to the extent that it applied the discovery rule under the circumstances presented here.

For a more thorough explanation of the accrual vs. discovery, *see* RONALD W. EADES, *Limitation periods for tort claims*, KY. L. OF DAMAGES § 12:13 (2022) ("[T]he time of discovery rule was an exception to the general rule of time of accrual . . . .") (internal quotation marks and citation omitted). In *Dunn v. Felty*, the Kentucky Supreme Court specifically determined that "[t]he alleged malicious prosecution began at [Plaintiff's] arraignment, when he was held pursuant to legal process, *and accrued upon a favorable termination of the criminal proceedings*

-8-

*against him.*" 226 S.W.3d 68, 73 (Ky. 2007) (emphasis added).[3] *See also* 54

C.J.S. *Limitations of Actions* § 229:

> An action for malicious prosecution ordinarily accrues
> on, and limitations run from, the date on which the
> previous unsuccessful civil or criminal proceedings were
> terminated in the current plaintiff's favor . . . .

In analyzing the present issue, it is also instructive to observe that:

> Historically, the tort of malicious prosecution has
> been disfavored because it runs contrary to the public
> policy supporting the exposure and prosecution of
> criminal conduct. We express that disfavor by requiring
> strict compliance with the prerequisites for maintaining a
> malicious prosecution action.

*Martin*, 507 S.W.3d at 7 (citations omitted). Therefore, based on the preceding

binding and persuasive authority, Washington's malicious prosecution claim

accrued May 19, 2008, when the criminal proceedings against her were terminated.

As previously stated, Washington filed her complaint in the present case on

February 19, 2010. Therefore, her claim for malicious prosecution was untimely,

as it is was filed outside of the one-year SOL period. Accordingly, the trial court

abused its discretion by denying Marlowe's directed verdict motion on the charge

of malicious prosecution.

---

[3] This rule has been applied has most recently in *DeMoisey v. Ostermiller*, No. 2014-CA-001827-MR, 2016 WL 2609321, at *14 (Ky. App. May 6, 2016) (citing *Dunn* for the proposition that "[i]t is correct that the statute of limitations does not begin to run on a malicious prosecution claim until the underlying litigation has been concluded.").

Marlowe raises the same general SOL argument concerning the abuse of process charge, albeit greatly underdeveloped. Nevertheless, this issue is properly preserved for our review. The United States District Court for the Western District of Kentucky applied Kentucky law to address a very similar issue as follows:

> Jackson asserts a state law abuse of process claim. A claim for abuse of process requires the plaintiff to establish "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *George v. Lavit*, 2006 WL 3228616, at *2 (Ky. Ct. App. Nov. 9, 2006) (citing *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 766 (Ky. Ct. App. 1980)). Jackson asserts that Jernigan abused the legal process by referring the case to the grand jury. (Pl.'s Compl. [DN 1] ¶ 3.) Jernigan argues that the claim is barred by a one-year statute of limitations, as the grand jury referral took place on September 9, 2015, more than a year before the complaint was filed. In support of this argument, she cites to *DeMoisey v. Ostermiller*, 2016 WL 2609321 (Ky. Ct. App. May 6, 2016). In that case, the Court of Appeals of Kentucky held that (1) abuse of process has a one-year statute of limitations, as it requires an injury to the person or his property, *see* KRS § 413.140(1)(a) (establishing one year statute of limitations for an action "for an injury to the person of the plaintiff"), and (2) the statute of limitations begins to run "from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued." *DeMoisey*, 2016 WL 2609321, at *14 (citations omitted). *DeMoisey*, however, was ordered not to be published, casting doubt on its value as precedent. Jackson has not responded to the argument that the claim is time-barred.

Regardless of *DeMoisey*, federal district courts in Kentucky have consistently held that abuse of process claims are subject to a one-year statute of limitations under KRS § 413.140(1)(a). *See Maqablh v. Heinz*, 2016 WL 7192124, at *8 (W.D. Ky. Dec. 12, 2016); *Vidal*,[4] 2014 WL 4418113, at *7; *Dickerson v. City of Hickman*, 2010 WL 816684, at *5 (W.D. Ky. Mar. 4, 2010) ("[A] cause of action for abuse of process has been generally held to accrue . . . from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued") (quoting 1 A.L.R.3d 953 § 1). Therefore, Jackson's claim for abuse of process is time-barred.

*Jackson v. Jernigan*, No. 3:16-CV-00750-JHM, 2017 WL 1962713, at *9–10 (W.D. Ky. May 11, 2017) (footnote omitted). In the present case, Washington's abuse of process claim accrued, at the latest, on May 19, 2008. She filed her complaint in the present case on February 19, 2010. Therefore, Washington's abuse of process claim was untimely, as it was filed outside of the one-year SOL period. Accordingly, the trial court abused its discretion by denying Marlowe's directed verdict on the charge abuse of process. Lastly, Marlowe raises several alleged evidentiary errors. However, because we are reversing and vacating the judgment here, we need not address those concerns. We now turn our analysis to the merits of Appeal No. 2019-CA-1058-MR.

---

[4] *Vidal v. Lexington Fayette Urban Cty. Gov't*, No. 5:13-117-DCR, 2014 WL 441 8113 (E.D. Ky. Sep. 8, 2014).

**Appeal No. 2019-CA-1058-MR − Render, Mozee, Peyton, and Floyd**[5]

The claims made in this case all involve various alleged acts of misconduct by Marlowe that appear to be entirely separate and distinct from the facts underlying Washington's claim. Similar to Washington's case, however, this Court has previously addressed the parties' claims at length in *Marlowe I*. Therein, the Court held that "[b]ased upon the holding in *Martin*, we conclude that the circuit court erred by dismissing the malicious prosecution claims of . . . Render, Peyton, Mozee, and Floyd upon the basis of Marlowe's entitlement to qualified official immunity. *See Martin*, 507 S.W.3d 1." *Marlow I* at *4. The Court affirmed summary judgment as to the remainder of Peyton's claims. *Id*. at *10. However, the Court reversed summary judgment as to the remainder of the claims raised by Render, Mozee, and Floyd, and remanded. *Id*. at *9-12.

On remand, the trial court granted Marlowe's renewed motion for summary judgment on the basis that she was entitled to qualified immunity for the claims not involving malicious prosecution. As to the malicious prosecution claims, the trial court granted Marlowe summary judgment on the basis that Appellants could not prove that Marlowe lacked probable cause to arrest them. Simply put, nothing in Appellants' argument on appeal requires reversal of the trial

---

[5] The legal authority previously cited in Washington's case applies equally here, *i.e.*, *Steelvest*, *Martin*, *etc*.

-12-

court's order granting Marlowe summary judgment as to Appellants' malicious prosecution claims, including the testimony of their expert witness, Dr. Thomas Barker. More precisely, Appellants have failed to cite with specificity to any disputed facts that would negate a judgment as a matter of law. As to their remaining claims concerning qualified immunity, Appellants have similarly failed to cite to any evidence of record or legal standard that would negate a judgment as a matter of law in this instance. *See* CR 76.12(4)(c)(v); *see also Marlowe I* at *3 (discussing relevant legal standards in qualified immunity cases). Therefore, we cannot conclude that the trial court erred in granting Marlowe's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we hereby REVERSE the Jefferson Circuit Court's denial of Marlowe's motion for a directed verdict on Washington's claims for malicious prosecution and abuse of process, and VACATE the court's judgment entered on October 14, 2019. We AFFIRM the court's order granting summary judgment against all other Appellants.

ALL CONCUR.

BRIEFS FOR APPELLANT
CRYSTAL MARLOWE:

Carol S. Petitt
Adam E. Fuller
Pewee Valley, Kentucky

BRIEFS FOR APPELLANTS
JEROME RENDER, GEORGE
MOZEE, GREGORY PEYTON,
AND NAOMI WEST AS
PARENT AND NEXT FRIEND
OF JOSHUA FLOYD:

John A. Bahe, Jr.
Patrick Markey
David Mushlin
Louisville, Kentucky

Ryan C. Vantrease
Louisville, Kentucky

BRIEF FOR APPELLEE TIFFANY
WASHINGTON:

John A. Bahe, Jr.
David Mushlin
Patrick Markey
Louisville, Kentucky

Ryan C. Vantrease
Louisville, Kentucky

BRIEF FOR APPELLEE CRYSTAL
MARLOWE:

Carol S. Petitt
Adam E. Fuller
Pewee Valley, Kentucky