[Civ. No. 30967.    Second Dist., Div. One.    July 25, 1967.]

MELVIN E. KASSAN, Plaintiff and Appellant, v. RUSSELL W. BLEDSOE et al., Defendants and Respondents.

Altman & Schwartz for Plaintiff and Appellant.

Leon J. Garrie and Russell W. Bledsoe for Defendants and Respondents.

FOURT, J.—Melvin E. Kassan appeals from a summary judgment granted respondents Russell W. Bledsoe and Leon

J. Garrie in Kassan's action for malicious prosecution against these and other defendants.

Kassan is an attorney who was originally served as a "Doe" defendant in certain actions directed against several defendants, principal among them one H. Red or Hugh Fraser, his client. Bledsoe and Garrie are attorneys who, together, represented the opponents of Fraser and Kassan in the earlier actions. In each of those actions a nonsuit was entered in favor of Kassan who, thereafter, filed this action for malicious prosecution.

The plaintiff in an action for malicious prosecution bears the burden of proving not only termination of the earlier proceedings in his favor, but also lack of probable cause on the part of defendants. (*Jensen* v. *Leonard,* 82 Cal. App.2d 340 [186 P.2d 206].) The sole issue before this court is whether the declarations filed by Bledsoe and Garrie in support of their motion are adequate to establish over Kassan's opposing declarations that no triable issue of fact exists with respect to probable cause. (*Citizens State Bank* v. *Hoffman,* 44 Cal.App.2d 854 [113 P.2d 121].) We find that the uncontroverted testimony in respondents' declarations amply supports the judgment.

Appellant asserts that the declarations filed by Bledsoe and Garrie are fatally defective because nowhere therein is it stated that these parties, if called as witnesses, could testify to the matters therein contained from their personal knowledge. Code of Civil Procedure, section 437c, requires that "The affidavit or affidavits in support of the motion must contain facts sufficient to entitle . . . defendant to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto." We are aware that "[u]nless it affirmatively appears from other language in the declaration that declarant can testify competently to the facts alleged therein, the declaration is incompetent. [Citation.]" (*Johnson* v. *Drew,* 218 Cal.App.2d 614, 616 [32 Cal.Rptr. 540].) In the instant case, nonetheless, "[i]t appears that defendants' affidavits speak of things that are within the personal knowledge of the respective affiants, and when that appears the statute has been complied with. . . ." (*Schessler* v. *Keck,* 138 Cal.App.2d 663, 670 [292 P.2d 314].)

We therefore examine the substance and content of both

moving and opposing declarations in the perspective of the customary test. ▮ "Where a defendant's affidavit establishes a complete defense to plaintiff's action and the plaintiff's affidavit in reply does not show a triable issue of fact with respect to that defense no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted. [Citations.]" (*Smith* v. *Southern Pac. Co.*, 222 Cal.App.2d 728, 733 [35 Cal.Rptr. 575].)

The declarations of Bledsoe and Garrie disclose that before Kassan was served as a "Doe" in either action, a thorough investigtaion was made of the activities of Fraser. He had been arrested for grand theft and on several occasions was sued for civil fraud. Kassan had a long-standing relationship with Fraser; they had occupied for several years the same suite on Wilshire Boulevard in Beverly Hills. Kassan was one of the original incorporators of the corporation, ultimately named Serdon Developments, Inc., (hereinafter called Serdon), which Fraser utilized as a vehicle to perpetrate suspected frauds. The results of further investigation by Bledsoe and Garrie suggested an established *modus operandi* wherein Fraser, acting alone or with others, would represent to someone interested in real estate development that he could obtain a favorable construction loan, would receive a deposit thereon and thereafter would fail to obtain the loan or to return the deposit. Whenever litigation was initiated Kassan would prepare and file an answer or cross-complaint and thereafter substitute out for the record, avoiding any further involvement in the matter by allowing Fraser to represent himself in propria persona. Garrie alleged that "Fraser is judgment proof, and by substituting out of the action, Kassan, on the record at least, evaded any responsibility for his close association with Fraser." The pattern of a familiar confidence game emerged with Kassan apparently calculating legal maneuvers.

Bledsoe and Garrie served Kassan as a party on their cross-complaint in one action and later instituted a separate action in which Kassan ultimately was served. Both actions involved the misapplication of trust funds. The latter litigation concerned rental payments of $3,000 per month which were due and owing Serdon by Zantop Air Transport, Inc. Zantop made payments to Fraser who, although without authority to collect such monies, deposited them in his so-called "H. Fraser Agency Trust Account." Although Fraser at one

time managed the "airport property" for Serdon's benefit, no agreement existed at any time between Fraser and Serdon which would have authorized Fraser to assume control of rental or other payments which might be made to him on behalf of the corporation or to place such funds in an account from which withdrawals might be made on his signature alone.

On August 21, 1961, Garrie phoned Kassan and asserted as a fact, later admitted by Fraser on deposition, that Fraser had no assets other than monies received on account of Serdon or others; these funds he requested Kassan to have Fraser retain in his trust account. Kassan, however, until he mailed in a substitution of attorneys on October 1, 1962, continued to work actively with Fraser despite his presumed knowledge that Fraser was misapplying and converting such trust funds.

Throughout the proceedings Bledsoe and Garrie continued their investigation of the circumstances and repeatedly conferred with the officers and directors of Serdon whom they represented both as individuals and on behalf of the corporation. Garrie requested an accounting of trust fund disbursements which Kassan promised to render no later than April 26, 1962. On September 28th no accounting had been received, so Garrie sent Kassan a copy of each complaint in which he intended to name him a party and requested that Kassan either account for trust funds theretofore collected or accept service. Only on November 23, 1962, after Kassan had failed and refused to so account, was he served as a defendant. Garrie alleges that "[b]y refusing to provide information which Mr. Kassan would have no motive to conceal had he not been an accomplice of Fraser's, Mr. Kassan himself provided reasonable cause to believe that he had conspired with Fraser to defraud the Serdon parties."

Both before and after he was joined as a party, Kassan obstructed legitimate discovery process by taking a recalcitrant position on depositions until ordered to answer by the court. When served, Kassan moved to quash service of summons upon him. His declaration in support of the motion stated that he represented Fraser and was being compensated by him. It was clearly implied that he had received and used for his own benefit the sum of $500 drawn by a check on Fraser's trust account in which Serdon funds were deposited although it was confirmed that he then knew Fraser had no source of funds other than payments received in trust. Kassan had received from Fraser in June of 1961 complete books and

records relating to Fraser's transactions, and thereafter he is presumably charged with knowledge of information therein contained. The $500 check, a copy of which is attached as an exhibit to Bledsoe's declaration, is dated August 4, 1961. The court denied on the merits the motion to quash service of summons. Kassan, by using trust funds with presumed knowledge of their source, rendered it both proper and necessary for Bledsoe and Garrie to bring him in as a participant in misapplication of these monies.

The trial court, at the time of granting the motion for summary judgment, had before it in addition to respondents' declarations those of their clients, E. Vernon Hester, F. B. Gardner, P. A. Van Woerkom and E. J. Weinberger, all officers and directors of Serdon, each stating that he disclosed to Bledsoe and Garrie, his attorneys, all of the facts known to him concerning Kassan, Fraser, and other defendants; that Bledsoe and Garrie had rendered their legal opinion that these parties had a good cause of action against Kassan; that each honestly believed he had a good cause of action and a legal right to join Kassan as a defendant in the litigation. Hester confirms the facts as set out in the Bledsoe and Garrie declarations, which were discussed at the various conferences which he held with the attorneys, sometimes with the attendance of other corporate officers.

The declarations of Kassan, by contrast, allege merely that he committed no wrong, that there was no evidence of wrongdoing on his part presented at the trial, that "the clients of these defendant attorneys were completely and totally ignorant of any wrongdoing on . . . [his] part" and, in effect, that Bledsoe and Garrie acted maliciously in joining him. He concludes that he has been maligned and respectfully requests the court to allow him to have his day in court "to show that these actions were prosecuted without probable cause and for malicious, mercenary, and improper motives." Kassan further states that he will show, by undisclosed evidence, that respondents had no reason to believe he was involved with Fraser except as his attorney and that he had no knowledge that Fraser was without authority to draw money for personal use from the trust account. Kassan fails to relate facts or to disclose the evidence upon which he relies. His statements must be relegated to that area of opinion and conclusion which constitutes incompetent testimony.

▮ The existence of probable cause, which is a question of law for the court (*Murdock* v. *Gerth*, 65 Cal.App.2d 170,

179 [150 P.2d 489]), constitutes a complete defense and the primary issue in an action for malicious prosecution. (*Bealmear* v. *Southern Cal. Edison Co.*, 22 Cal.2d 337 [139 P.2d 20].) ▮ "While malice may be inferred from the want of probable cause, want of probable cause may not be implied from the most express malice. ▮ Insofar as it is applicable to the law of malicious prosecution, the term 'probable cause' has been defined to be a suspicion founded upon circumstances sufficiently strong to warrant a reasonable person in the belief that the charge is true. [Citations.] ▮ Nor is the existence of probable cause negatived by merely showing that the accused was successful at the trial of the proceedings in securing an exoneration. Not even a conflict on the issue of probable cause is created by such favorable termination of the prosecution which gave rise to the malicious prosecution action [citations]." (*Jensen* v. *Leonard, supra*, 82 Cal.App.2d 340, 351.) ▮ It is essential to the plaintiff's case that there be substantial evidence to create a conflict or an inference of lack of probable cause. (*Neblett* v. *Elliott*, 46 Cal.App. 2d 294, 305-306 [115 P.2d 872].)

▮ "It would be inimical to the administration of justice if an attorney were to be held liable to a malicious prosecution action where, after an honest, industrious search of the authorities, upon facts stated to him by his client, he advises the latter that he has a good cause of action, although the courts upon a trial of such action decide that the attorney's judgment was erroneous. If the issue which the attorney is called upon to decide is fairly debatable, then under his oath of office, he is not only authorized but obligated to present and urge his client's claim upon the court. And if it subsequently is determined that the position honestly taken by the attorney was erroneous he should be relieved from responsibility." (*Murdock* v. *Gerth, supra*, 65 Cal.App.2d 170, 179).

▮ If a plaintiff acts in the institution of the complained-of action upon the opinion and advice of counsel to the effect that he had a good cause of action after laying all of the facts of the case, in good faith, before said counsel, it is held that probable cause therefore is established. (*Johnson* v. *Southern Pac. Co.*, 157 Cal. 333 [107 P. 611].) "When the advice to the client is honestly, though mistakenly given by an attorney, the same immunity from liability for malicious prosecution should attach to him." (*Murdock* v. *Gerth, supra*, 65 Cal.App.2d 170, 180.)

▮ The declarations submitted by Bledsoe and Garrie

demonstrate an "honest suspicion or belief . . . founded upon facts sufficiently strong to warrant the average person in believing the charge to be true" and thus establish probable cause. (*Murdock* v. *Gerth, supra,* 65 Cal.App.2d 170, 178.) Those submitted by Kassan state no facts sufficient to create a conflict.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.