[Civ. No. 43758. Second Dist., Div. One. Mar. 31, 1975.]

TOOL RESEARCH AND ENGINEERING CORPORATION et al.,
Plaintiffs and Appellants, v.
ROBERT HENIGSON et al., Defendants and Respondents.

**COUNSEL**

Hillel Chodos for Plaintiffs and Appellants.

Veatch, Snow, Carlson, Dorsey & Quimby, Wayne Veatch and Herbert F. Blanck for Defendants and Respondents.

**OPINION**

**THOMPSON, J.**—The case at bench reaches us on an appeal by plaintiffs in an action for malicious prosecution brought against a corporation, its directors, and its counsel from a summary judgment entered in favor of counsel. Concluding that the trial court correctly determined that the moving defendants established that they were not liable and that the plaintiffs failed to show the existence of a triable issue of fact, we affirm the judgment.

The summary judgment which is the subject of this appeal was entered March 20, 1973, prior to the January 1, 1974, effective date of California's 1973 Summary Judgment Act. (Stats. 1973, ch. 366, p. 807.) ■ We therefore review the judgment in the context of the pre-1974 summary judgment law. (*D'Amico v. Board of Medical Examiners*, 11 Cal.3d 1, 20, fn. 15 [112 Cal.Rptr. 786, 520 P.2d 10].) Thus we consider respondents' declarations strictly to determine if they establish their right to judgment by conclusively negating a necessary element of appellants'-plaintiffs' cause of action, and appellants' declarations liberally to determine if appellants have established the existence of triable issues of fact. (*Stationers Corp. v. Dun & Bradstreet, Inc.*, 62 Cal.2d 412,

417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Coyne* v. *Krempels,* 36 Cal.2d 257, 262 [223 P.2d 244].) We consider depositions, documents, and records of a former proceeding before the trial court at hearing on the motion in the same light.

So viewed, the record establishes the following. On September 13, 1967, Southwestern Capital Corporation (Southwestern) filed an action in the federal district court in New Jersey against appellants Tool Research and Engineering Corp. (Tool Research), Leo Wyler, its chief executive officer who had also been president of Southwestern at the time of the acts complained of, and Milton Velinsky,[1] president of United Wholesale Building Supply Company (United), a New Jersey Company. The action claimed that in 1962 Wyler had induced Southwestern, a small business investment company, to loan $200,000 to United, failing to disclose that United was in precarious financial condition, owing a large sum of money to Westlock, a paper subsidiary of Tool Research, on delinquent open account. The complaint charged breach of fiduciary duty and violation of the federal Corporate Securities Act of 1940. It alleged also that the derelictions had not been discovered until 1967 after an "informal" investigation of the transaction by personnel of the Securities and Exchange Commission. Respondents did not act as counsel in the filing of the action, the matter having been investigated by house counsel for Southwestern and special counsel employed for the purpose and the complaint having been prepared and filed by a New Jersey lawyer.

In February 1968, the action was transferred to the United States District Court of the Central District of California on motion of appellants, the defendants in that action. In late March of 1968, Southwestern's general counsel contacted respondent Henigson to determine if his law firm, respondent Lawler, Felix & Hall, would represent Southwestern in the pending action. Respondents commenced an examination of the case. They considered the opinions of Southwestern's house counsel and special counsel who, after an extensive investigation, had determined that Southwestern's claim was meritorious, and the informal opinion expressed by a lawyer employed by the Securities and Exchange Commission to the same effect. Respondents also reviewed the pleadings, depositions taken by the Securities and Exchange Commission in an informal investigation, the documents relating to an unsuccessful motion to dismiss the matter prosecuted by appellants in the New

---

[1]The matter was subsequently dismissed as to Velinsky.

Jersey federal court, Tool Research's answers to interrogatories, and a partial deposition of Velinsky taken by New Jersey counsel. That data confirmed the opinions of the various counsel for Southwestern who had participated in the matter to that time. In June 1968, Henigson, acting in the good faith belief that Southwestern's claim was a good one, accepted the representation on behalf of his firm which became counsel of record for Southwestern in the federal suit.

Respondents interviewed personnel of Southwestern who had participated in the United loan, and conducted extensive discovery. They developed considerable evidence that Wyler, while acting as the chief executive officer of both Tool Research and Southwestern, had suggested to the directors of Southwestern that from information gained by him in his office with Tool Research he had become aware that United, a customer of Tool Research, was a new, rapidly growing company with a bright future which was in need of a long-term loan to alleviate a shortage in working capital incident to its rapid growth. He presented an unaudited statement of United showing a profit for the preceding eight-month period. In fact, United was in a precarious financial condition. It was seriously delinquent in its trade accounts with Tool Research but was permitted to continue in that position because, as the largest single customer of Tool Research, it was an outlet which was permitting Tool Research to enter a new geographical market for its builders supplies which it had not previously penetrated. The manager of the builders supply division of Tool Research who had directly dealt with United was of the opinion at the time Wyler presented United to Southwestern as a customer for a loan that United was showing a loss rather than a profit and that it was insolvent in the sense that its liabilities exceeded its assets. While noting United's need for working capital, Wyler did not disclose to Southwestern the full extent of the precarious nature of United's financial condition, its loss position contrary to the income statement, or the importance of United to Tool Research as an outlet for its products. Without undertaking its customary analysis of possible loans, Southwestern tentatively agreed to make a long-term loan of $400,000 in return for a note and detachable warrants permitting the purchase of United shares at a bargain price. Wyler caused the documentation for the transaction to be prepared by counsel for Tool Research rather than Southwestern. The transaction for the $400,000 loan was not consummated. Southwestern instead lent $200,000 to United in two installments of $100,000 each represented by a demand note. As United's financial condition continued to deteriorate, the loan was converted to a long-term obligation with a loan agreement giving

Southwestern some control over United's finances. United soon declared bankruptcy with a resulting $178,000 loss to Southwestern.

The investigation and discovery also disclosed facts from which inferences favorable to appellants, Tool Research and Wyler, could be drawn, and which, if accepted by a trier of fact, would defeat the Southwestern claim. Wyler claimed to have made a full disclosure. There was evidence of an independent, albeit cursory, investigation of United by Southwestern prior to the loan. There was conflicting evidence on the time of discovery by Southwestern of Wyler's conduct which was relevant to the possibility that Southwestern's claim was barred by the statute of limitations. There was evidence also that the transaction had been restructured after Wyler left the employ of Southwestern, and that Southwestern had refused an offer by Wyler on behalf of Tool Research to take over the loan, both relevant to the issue of whether Wyler's conduct proximately caused injury to Southwestern. Other evidence tended to impeach that favorable to appellants as it also did that favorable to Southwestern.

In January 1969, the federal district court denied a motion to dismiss and for summary judgment filed by appellants Tool Research and Wyler. The case was tried to a jury for 15 days. After three days of deliberations, the jury found for appellants, defendants in the federal action. Judgment was entered in the federal court in February of 1971. Appellants then filed the action for malicious prosecution which commenced the case at bench. They named as defendants Southwestern, its directors who had authorized the federal court suit, and respondents, the lawyers who had represented Southwestern after the federal court action was transferred to California. All defendants in the case at bench moved for summary judgment. Declarations of the defendants established the facts recited above plus the proposition that Henigson had acted in good faith on behalf of his law firm in the representation of their client in the federal lawsuit. The only declaration in opposition to the motions for summary judgment is that of counsel for the plaintiffs which, in effect, argues the inferences to be drawn from various documents, depositions, fruits of discovery, statements, and the record of proceedings in the federal court. Those items were also placed before the trial court in connection with the motions. The trial court granted the motion for summary judgment on behalf of respondents, counsel for Southwestern, while denying it as to the other defendants. This appeal from the judgment entered for respondents followed.

■ Appellants contend: (1) where a suit for malicious prosecution of a civil action is filed against a party and its counsel in a prior action under circumstances in which one of the defenses of the party may be good faith reliance upon the advice of counsel, the liability of attorney and client is joint so that any misconduct by the client is imputed to the attorney; (2) the record establishes triable issues of fact of the absence of probable cause of respondents in pursuing the federal court action; and (3) the issue of probable cause is inappropriate for determination upon summary judgment. The contentions lack merit.

Appellants' novel argument of joint liability of attorney and client for the conduct of each other where both are joined as defendants in a malicious prosecution action lacks substance. Granted that for some purposes an attorney is treated as the agent of his client so that his conduct is imputed to his client (see 1 Witkin, Cal. Procedure (2d ed.) Attorneys, § 107 et seq.), the client is not the agent of his attorney. Thus, if the client is guilty of misfeasance in failure to disclose all facts relevant to probable cause to his attorney or malfeasance in a false recitation, the dereliction is not imputable to counsel.

■ Appellants' cause of action for malicious prosecution of a civil suit is dependent upon the existence of three elements: the prior civil action must have terminated in appellants' favor; respondents must have lacked probable cause in representation of their client; and respondents must have acted maliciously. (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 255; *Bertero* v. *National General Corp.,* 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608].) ■ While disclosing a termination of the prior lawsuit favorable to appellants, the record discloses that there is no triable issue of fact of probable cause, the absence of that element being established by the record as a matter of law.[2]

■ Resolution of the question of the existence of a triable issue of fact on the question of probable cause requires the isolation of the factual and legal elements of probable cause itself. The trier of fact must resolve any conflict in the evidentiary underpinning of the facts of probable cause. Once that conflict has been resolved, the question of whether the facts as they are found to exist constitute probable cause for bringing the former action is a question of law to be resolved by the judge. (*Franzen* v. *Shenk,* opn. on den. of rehg., 192 Cal. 572,

---

[2]The presence or absence of probable cause is critical since malice may be inferred from its absence (see 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 253), and malice is otherwise rebutted.

618-619 [221 P. 932]; *Kassan* v. *Bledsoe,* 252 Cal.App.2d 810 [60 Cal.Rptr. 799]; *Davis* v. *Local Union No. 11, Internat. etc. of Elec. Workers,* 16 Cal.App.3d 686, 692 [94 Cal.Rptr. 562].)

Here there is no conflict in the showing made by appellants and respondents with respect to the factual underpinning that is in any way relevant to the existence of probable cause in the context of this appeal. ■ An attorney has probable cause to represent a client in litigation when, after a reasonable investigation and industrious search of legal authority, he has an honest belief that his client's claim is tenable in the forum in which it is to be tried. (*Murdock* v. *Gerth,* 65 Cal.App.2d 170, 179 [150 P.2d 489], discussed in *Kassan* v. *Bledsoe, supra,* 252 Cal.App.2d 810, 816.) The test is twofold. The attorney must entertain a subjective belief in that the claim merits litigation and that belief must satisfy an objective standard. ■ There is no question in the matter at bench of the existence of evidence which, if believed by the trier of fact in the earlier lawsuit, would have resulted in a judgment for Southwestern in the federal court action. Nor is there any question that respondents' investigation of fact and law was reasonable and industrious. Henigson's declaration to the effect that he honestly believed his client's claim was a tenable one stands uncontradicted.

Appellants do not contend that evidence supporting Southwestern's claim against them was absent or that respondents' performance as lawyers was inadequate. Rather, they argue that respondents were required to weigh the evidence for and against their clients and to proceed with their representation only if convinced that the trier of fact would accept the evidence in favor of the cause they represented. The argument is groundless. It is the attorney's reasonable and honest belief that his client has a tenable claim that is the attorney's probable cause for representation (*Murdock* v. *Gerth, supra,* 65 Cal.App.2d 170, 179; *Kassan* v. *Bledsoe, supra,* 252 Cal.App.2d 810, 816), and not the attorney's conviction that his client must prevail. ■ The attorney is not an insurer to his client's adversary that his client will win in litigation. Rather, he has a duty "to represent his client zealously . . . [seeking] any lawful objective through legally permissible means . . . [and presenting] for adjudication any lawful claim, issue, or defense." (A.B.A. Code of Professional Responsibility, EC 7-1, DR 7-101(A)(1), discussed in 1 Witkin, Cal. Procedure (2d ed.) Attorneys, § 239.) So long as the attorney does not abuse that duty by prosecuting a claim which a reasonable lawyer would not regard as tenable or by unreasonably neglecting to investigate the facts and law in making his determination to proceed, his

client's adversary has no right to assert malicious prosecution against the attorney if the lawyer's efforts prove unsuccessful.

Appellants argue further that the existence of evidence in the federal court suit which rebutted that favorable to Southwestern supports the inference that respondents did not honestly believe that their client's claim was a tenable one. The argument confuses an honest belief in the arguability of a claim in litigation with a belief in the merit of the claim itself. ▮ The attorney's obligation is to represent his client honorably and ethically, and he may, without being guilty of malicious prosecution, vigorously pursue litigation in which he is unsure of whether his client or the client's adversary is truthful, so long as that issue is genuinely in doubt. Indeed, a lawyer is ethically precluded from asserting his personal belief in the justice of his client's cause. (A.B.A. Code of Professional Responsibility, DR 7-106(C)(4), cited in 1 Witkin, Cal. Procedure (2d ed.) Attorneys, § 239.) ▮ The existence of evidence contrary to the position taken by an attorney in litigation does not of itself support the inference of lack of honest belief in the tenability of the cause prosecuted by him. The weight of the contrary evidence is a significant factor to be considered in determination of the legal issue of whether the attorney's belief that the cause is tenable is a reasonable one, but it is not part of the evidentiary underpinning of the issue determinable by the trier of fact.

▮ Thus, in the case at bench, appellants have not presented an issue determinable as one of fact concerning probable cause. The issue is consequently to be determined as one of law. We have examined the mass of material which underlay respondents' determination that Southwestern's claim was properly litigable against appellants. That examination convinces us, as it did the federal district judge who let the case go to a jury and the trial judge, that the evidence was closely balanced and that respondents' determination was a reasonable one.

Appellants also ask that we draw an inference of lack of 'good faith belief of respondents in the viability of Southwestern's cause in the federal court from the fact that various of the directors of Southwestern are unfamiliar with the theory of recovery being pursued by their counsel, the respondents. Assuming that an ultra liberal construction of the record in favor of appellants supports the fact raised by them, it is irrelevant to respondents' liability for malicious prosecution. The fact that his client may not be intimately aware of the legal theories being pursued by him may justify some mild criticism of a lawyer's communi-

cation to his client, but by no means sustains an inference of lack of probable cause to believe that the theory is a tenable one. Appellants argue also that a $50,000 fee received by respondents in the federal case supports the inference that they maintained it for an improper motive of personal gain. The inference must fail absent a showing that the fee was not reasonable, and no such showing is here made.

■ Appellants contend alternatively that, although the record before the trial court may not reveal any triable issue of fact, the case is one that is not appropriate for summary judgment under the pre-1974 law. They argue that respondents' good faith belief in the vitality of Southwestern's case in the federal court is an issue uniquely to be determined by reference to the credibility of respondents' witnesses so that determination of the issue without the opportunity of cross-examination at trial is improper. (See, e.g., *Harding* v. *Purtle,* 275 Cal.App.2d 396, 399 [79 Cal.Rptr. 772]; *Frye* v. *Felder,* 246 Cal.App.2d 136, 140 [54 Cal.Rptr. 627].) The argument ignores the posture of the parties. If the respondents' witnesses on the issue of good faith belief are thoroughly impeached, the record is nevertheless insufficient to justify a judgment for appellants who have the burden of proving lack of that belief. Under those circumstances, the rule of impropriety of summary judgment in the face of an issue of credibility on a fact within the knowledge of the moving party is inapplicable. (*Jordan* v. *Canale Foods, Inc.,* 15 Cal.App.3d 634, 638-639 [93 Cal.Rptr. 348].)

In summary, the record of the case at bench establishes that respondents were not guilty of malicious prosecution within the standards applicable to counsel who represent a client in litigation, and that there is no issue properly determinable by a trier of fact. It establishes, also, that the matter is one properly determinable on summary judgment.

The judgment is affirmed.

Wood, P. J., and Hanson, J., concurred.

A petition for a rehearing was denied April 25, 1975, and appellants' petition for a hearing by the Supreme Court was denied May 28, 1975. Mosk, J., did not participate therein.