RENDERED: DECEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1525-MR

THOMAS N. MCKINNEY, JR. APPELLANT

v. APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCHELL PERRY, JUDGE
ACTION NO. 15-CI-001558

KENTUCKY NEIGHBORHOOD BANK,
INC.; MATT MARDIS; and JERRY
M. COLEMAN APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, KRAMER, AND MAZE, JUDGES.

KRAMER, JUDGE: Thomas McKinney, Jr., appeals from an order of the

Jefferson Circuit Court summarily dismissing his claims against the above-

captioned appellees. Upon review, we affirm. Much of the background of this

matter was discussed in a prior opinion from this Court:

The underlying action began with the filing of a verified complaint in which McKinney, who is a licensed real estate broker, sought damages against Kentucky Neighborhood Bank, Inc. (KNB), Matt Mardis, and Jerry M. Coleman. Coleman is a licensed and practicing attorney, and Mardis works for KNB. In his complaint, McKinney alleged that in July of 2012, he had been hired by the owners to manage property in Meade County. Two months earlier, KNB had filed a foreclosure action on the same property to enforce a mortgage. In September of that year, KNB obtained a judgment permitting the property to be sold at a judicial sale. KNB purchased the property at the Commissioner's sale. The Report of Sale was confirmed on September 20, 2012, and a deed was prepared and approved. The deed was recorded in the Meade County Clerk's Office on October 11, 2012.

McKinney went on to allege that on September 19, 2012, Coleman wrote a letter to him on behalf of KNB accusing him of stealing fixtures from the property and threatening legal action against him. That letter stated as follows:

> I am the attorney representing Kentucky Neighborhood Bank who purchased the property at the Master Commissioner sale in the above-referenced lawsuit [KNB v. Collins, Meade Circuit Court, Civil Action No. 12-CI-00113], pursuant to a mortgage that the Bank had on these premises. It had been brought to my attention that you may [have] allowed or been aware of fixtures being removed from the premises, consisting of toilets, water heaters, dishwashers, stoves, microwaves, refrigerators, ceiling fans and perhaps even other fixtures. Certainly you had the keys to the premises and would have been in a position to know of these fixtures being removed. Taking these fixtures from

-2-

the premises is unlawful and the Bank will not stand for it. They have directed me to take legal action if all of these fixtures are not returned at a designated time and place to the premises for installation by the Bank. We do not want them reinstalled, we want them to be brought to the premises at an appointed time. In addition, we want the keys to the premises since my client purchased the property and the Bank has a right to those keys.

Please get in touch with me immediately about this matter to avoid legal proceedings.

Coleman wrote a second letter several days later making the same accusation and stating that witnesses saw him take fixtures from the property. That letter provided as follows:

Since I last talked with you on the phone we have done some investigating and found several witnesses who saw you taking certain ones of these items from the condo. We are also having a police report done on it and once that is completed it will be taken to the Hardin County Commonwealth Attorney's office for prosecution if these items are not returned by the end of the week. Please give me a call before then if you have any intention of keeping this matter out of the criminal courts.

McKinney contended that he had not stolen anything and that KNB did not have legal or equitable title of the property when the demand was made.

Mardis, as KNB's agent, initiated a criminal action against McKinney in Meade District Court, and McKinney was subsequently charged with felony theft.

-3-

As a result, McKinney was arrested at his place of business, and while he was released, his liberty was restricted by the conditions of his release, including having to surrender his concealed carry weapon permit. McKinney alleged that Mardis provided false or misleading information at the probable cause hearing, which led to a finding of probable cause and a referral to the grand jury. The grand jury returned an indictment charging McKinney with felony theft charges.[FN]

[FN] Criminal Action No. 13-CR-00021.

McKinney alleged that the criminal prosecution was brought about by the defendants in order to extort money from him and to gain an advantage in what he said should have been a civil matter. The criminal charges were dismissed on June 23, 2014, without a stipulation of probable cause.

As a result of these factual allegations, McKinney filed the above civil action seeking damages for malicious prosecution, negligence, defamation by libel and slander, outrageous conduct, and civil conspiracy. He demanded compensatory and punitive damages. Coleman filed an answer to the complaint and raised several affirmative defenses, including that McKinney's claim was barred by the applicable statute of limitations and that he was precluded from asserting his action because he paid restitution in the amount of $3,000.00 to have the criminal action dismissed. Because the criminal proceeding was not terminated in McKinney's favor, he could not bring his claim.

In lieu of filing an answer, KNB and Mardis moved to dismiss McKinney's complaint pursuant to Kentucky Rules of Civil Procedure (CR) 8.01 and CR 12.02. They argued that McKinney could not prove a negligence claim because he could not establish that a duty existed between them or that there was a breach of any duty. In addition, the one-year statute of limitations for personal

injuries as set forth in Kentucky Revised Statutes (KRS) 413.140(1)(a) had expired. The limitations period began to run on February 2, 2013, when he was indicted by the grand jury, and the complaint was filed more than two years later. As to McKinney's defamation claim, KNB and Mardis claimed that they were entitled to absolute immunity for any statements made in the course of a judicial proceeding. As with the negligence claim, KNB and Mardis contended that the limitations period for this claim had expired. McKinney's outrageous conduct claim also failed to include an allegation that they acted with the intent to cause emotional distress or that he suffered from severe emotional distress. His civil conspiracy claim failed to allege sufficient facts that any of the defendants conspired to commit malicious prosecution and, in any event, the limitations period had expired. Finally, McKinney's malicious prosecution claim failed because the criminal action was supported by probable cause.

McKinney filed a response in opposition to the motion to dismiss, arguing that in a light most favorable to him, KNB and Mardis failed to establish that he was not entitled to relief.

By separate motion, Coleman moved for a judgment on the pleadings pursuant to CR 12.03, and while the memorandum in support was not included in the record on appeal, it appears that Coleman raised arguments similar to those raised by KNB and Mardis in their motion to dismiss. Attached to McKinney's response was a copy of the Commonwealth's answer to the bill of particulars in the criminal action. In the answer, the Commonwealth included a list of items that had allegedly been taken as well as the value of each item. The value of the items totaled $7,465.00.

In an opinion and order entered November 16, 2015, the circuit court ruled on Coleman's motion for a judgment

on the pleadings. The court granted the motion, holding as follows:

> The thrust of Coleman's argument rests on the principle that, because McKinney issued a check of $3,000 which resulted in the dismissal of his criminal case in Meade County, a claim of malicious prosecution cannot survive, because "having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor." *Broaddus v. Campbell*, 911 S.W.2d 281, 285 (Ky. App. 1995). McKinney counters that, although he paid the $3,000, this was not an admission of guilt which led to the dismissal of charges, but rather a preventative effort to end prosecution without a comment on the merits of the charges.[1]

---

[1] Since the rendering of our earlier opinion in this matter, McKinney has, as discussed below, taken to denying *knowingly* paying KNB *any money* prior to when his felony theft charge was dismissed. This is a material deviation from his original position. In the August 14, 2015 response he filed to the appellees' motions for judgment on the pleadings, McKinney acknowledged – as indicated in the trial court's November 16, 2015 order – that he *knowingly* paid KNB $3,000 prior to when his felony theft charge was dismissed. There, in relevant part, he stated:

> Coleman's argument in support of his motion to dismiss the Malicious Prosecution claim is very simple-- he argues the claim should fail because Mr. McKinney cannot prove the termination of the judicial proceedings—the criminal action brought against him in the Meade Circuit Court-- was in his favor. Coleman's entire argument in this regard is premised on his suggestion the criminal charges against Mr. McKinney ". . . were *only* dismissed *after* Plaintiff [Mr. McKinney] settled the matter by paying KNB $3,000 in restitution". This argument must fail for a number of reasons. . . .
>
> [T]he money paid to KNB by Mr. McKinney was not the reason why the criminal felony charges against Mr. McKinney were dismissed. The motive for the criminal charges was not that Mr. McKinney committed a crime and needed to be punished, but rather, because Coleman and the other Defendants used the

Malicious prosecution is a claim "not favored in the law." *Strohschein v. Crager*, 258 S.W.3d 25, 30 (Ky. App. 2007). In *Broaddus*, cited above, the plaintiff's malicious prosecution claim was dismissed because the plaintiff had admitted to probable cause for the criminal charges. Despite the fact that McKinney maintains he has not admitted to probable cause, the money paid to secure the dismissal of the charges means that the criminal case was not resolved in his favor, which renders any claim for malicious prosecution moot. Regarding McKinney's surviving claims, his defamation [claim] must fail based on the expiration of the one year statute of limitations on defamation actions. His outrage claim must fail, because emotional distress damages are available through traditional torts. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky. App. 1993). McKinney's negligence claim must fail because of negligence elements in other claimed torts, and his civil conspiracy claim fails both as a matter of law and under the statute of limitations. Accordingly, Coleman's Motion for Judgment on the Pleadings is granted.

The court made the order final and appealable. In a separate order entered December 7, 2015, the court ruled that McKinney's claims against KNB and Mardis were dismissed for the same reasons as set forth in the November order, and thus both were considered under CR 12.03.

---

criminal prosecution and the threat thereof to extort money in a civil dispute from Mr. McKinney.

*McKinney v. Coleman*, No. 2016-CA-000303–MR, 2017 WL 3129210, at \*1-\*3 (Ky. App. Jul. 21, 2017) (unpublished).

Following McKinney's prior appeal, this Court held the circuit court "should not have relied upon McKinney's $3,000.00 payment as a basis to grant CR 12.03 relief. Rather, the circuit court should have treated the motions as ones seeking summary judgment and followed the procedure for such motions." *Id.* at \*5. Accordingly, we declined to address any aspect of the circuit court's order, and instead vacated and remanded for further proceedings.

For over two years following our remand, the parties then conducted further discovery regarding the facts surrounding the dismissal of McKinney's felony charge; the appellees once again moved to have McKinney's claims dismissed (this time, under the standard of CR 56); and, as indicated, the circuit court summarily dismissed McKinney's claims. This appeal followed. Additional information, including the substance of what was gleaned through the parties' further discovery, will be discussed in the context of our analysis.

When a trial court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991) (citations omitted). A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955). "If the summary judgment is sustainable on any basis, it must be affirmed." *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006).

**1. Malicious prosecution**

To prevail on a claim of malicious prosecution, the claimant must prove:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based; 4) the proceeding, except in ex parte civil actions, terminated in favor of the person

against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

Here, as before, the circuit court's decision to dismiss McKinney's malicious prosecution claims against the appellees focused upon the fourth above-stated element. Specifically, the circuit court held that the appellees had adduced affirmative evidence demonstrating McKinney had agreed to pay KNB $3,000 in exchange for the dismissal of his felony charge and that McKinney had produced no material evidence to the contrary. Consequently, it could not be said that the criminal proceedings had terminated in McKinney's favor and, accordingly, McKinney's malicious prosecution claim failed as a matter of law. *See Broaddus*, 911 S.W.2d at 285.

On appeal, McKinney offers two overarching reasons why, in his view, the circuit court erred in this respect. First, McKinney asserts that in 13-CR-00021, the criminal proceedings terminated in his favor because they were dismissed "with prejudice," and because the court's one-sentence order in that matter did not include a written stipulation to the effect that probable cause supported the issuance of his indictment.

In making this argument, McKinney misapprehends what his burden was below. As explained in *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 605 (Ky. App. 2006),

-10-

In *Alcorn v. Gordon*, 762 S.W.2d 809 (Ky. App. 1988), a panel of this court cited to Comment a to the Restatement (Second) of Torts § 660 for the proposition that "[p]roceedings are 'terminated in favor of the accused' as that phrase is used in § 653 and throughout this Topic, only when their final disposition is such as to indicate the innocence of the accused." *Id*. at 811-12. Further citing to *Lackner v. LaCroix*, 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393 (1979), we elaborated on this principle, stating:

> It is apparent "favorable" termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. *If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution*.

*Id*. at 812, citing *Lackner*, 159 Cal.Rptr. at 695, 602 P.2d at 395 (Italics added). We therefore concluded that "dismissal of a suit for technical or procedural reasons that do not reflect on the merits of the case is not a favorable termination of the action." *Id*.

In other words, the onus was upon McKinney to affirmatively

demonstrate *why* his criminal charge was dismissed, not *that* it was dismissed.

Because the one-sentence order of dismissal entered in 13-CR-00021 did not on its

face reflect on either McKinney's innocence or responsibility for his alleged felony

offense, it did not satisfy McKinney's burden in that respect. Continuing in that

-11-

vein, it likewise makes no difference that the order provided no stipulation to the effect that probable cause supported the issuance of his indictment. No Kentucky authority required such a stipulation, and its absence, which merely gave rise to speculation, did not excuse McKinney from his burden to prove this element, along with every other element, of his malicious prosecution claim. *See* CR 43.01; *see also O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (explaining speculation is insufficient to overcome summary judgment).

Second, McKinney argues "there is a mountain of evidence to refute that the [$3,000] payment was a quid pro quo payment" for the dismissal of his criminal charge. This "mountain," as he describes it in his appellate brief, consists of the following: (1) his assertion that *if* he had stood trial for his criminal charge, he would have prevailed – particularly because he had successfully moved to exclude certain evidence from any potential trial prior to when his charges were ultimately dismissed, and because in his view his charge lacked merit; (2) what he describes as the absence of a written compromise agreement, memorialized of record, regarding his criminal charge; and (3) his denial that he ever *knowingly* paid KNB *any money* prior to when his felony theft charge was dismissed.

As to point (1), the disposition of McKinney's alleged criminal matter is at issue in this appeal, not the merits or the hypothetical outcome of a trial that never occurred. McKinney's mere assertion that his criminal matter *would*, *could*,

or *should* have been dismissed on the merits is not evidence that it *was* dismissed on the merits; it is mere speculation. McKinney also notes that the dismissal of his criminal matter was prompted by a motion from his former counsel, Richard Hardin. However, the motion to dismiss that Hardin filed on his behalf, which is of record herein, likewise sheds no light upon why his criminal matter was dismissed. In full, the motion stated: "COMES now your DEFENDANT, THOMAS MCKINNEY (hereinafter "Defendant"), by and through Counsel, respectfully requesting this criminal action be Dismissed with prejudice."

As to point (2), McKinney is correct that no written compromise agreement is memorialized of record regarding his criminal charge. However, as the circuit court correctly observed, there is overwhelming and unrebutted evidence that such an agreement existed, and that it effectuated the dismissal of McKinney's charge. We begin with the post-remand affidavit of David Williams, the Commonwealth Attorney who prosecuted McKinney. He recalled that McKinney's criminal charge was dismissed as the result of a compromise. In relevant part, he averred:

> 1. I am the Meade County Commonwealth's Attorney, and was the Meade County Commonwealth's Attorney during the criminal prosecution of Plaintiff, Thomas McKinney, for theft by unlawful taking or disposition of property valued over $500 (Meade Circuit Court Criminal Case No. 13-CR-00021).

2. Mr. McKinney settled the aforementioned criminal charge by paying restitution in the amount of $3,000 to the criminal complainant, Defendant Kentucky Neighborhood Bank. A copy of the check through which Mr. McKinney made this payment is attached hereto as Exhibit A. I was personally involved in the settlement discussions with Mr. McKinney's criminal defense attorney, Hon. Richard Hardin.

3. The criminal prosecution of Mr. McKinney was terminated for the sole reason that he paid restitution of $3,000.00 to the criminal complainant. Mr. McKinney's payment of restitution of $3,000.00 to the criminal complainant was the express condition for my agreement to drop the criminal charge brought against him.

McKinney's former defense attorney, Richard Hardin, likewise provided a post-remand affidavit in support of McKinney's response to the appellees' motion for summary judgment. There, in relevant part, Hardin averred:

4. I represented Thomas McKinney in Meade Circuit Court Action No. 13 CR 00021, which is now the subject of the above lawsuit.

5. The case against Mr. McKinney was dismissed by the Court with prejudice, with no stipulation of probable cause by Mr. McKinney. In my opinion, the Commonwealth had no evidence to prove any of the accusations against Mr. McKinney and prior to the dismissal, I had made a motion to dismiss.

6. To the best of my recollection, there was no agreement regarding the dismissal memorialized either in writing or on the record. In my years of practice, I have never seen where a case was dismissed in exchange for some act by the Defendant without the requirement of a stipulation of probable cause.

-14-

We have already addressed the salient points of Hardin's affidavit. To review, the merit of McKinney's criminal proceeding was not relevant to the appellees' summary judgment motion. The "motion to dismiss" Hardin filed on McKinney's behalf provided no clue as to why the criminal proceedings were dismissed. And, the absence of a "probable cause stipulation" in the court's order provided no inference that probable cause was absent. That said, Hardin's affidavit is more notable for what it does *not* say. In paragraph "6," Hardin represents he has no "recollection" of an "agreement regarding the dismissal memorialized either in writing or on the record." But, he does not *deny* the existence of such an agreement.

Fortunately, we need not rely upon Hardin's recollection. Instead, for purposes of summary judgment, the appellees provided the circuit court two video recordings from the Meade Circuit Court criminal proceedings. Both recordings occurred on May 22, 2014. They feature the presiding judge entertaining motions in a conference room; an assistant prosecuting attorney sitting near the judge at the conference table; and Richard Hardin, who walks into the conference room during each recording to inform the judge and assistant prosecuting attorney about his continued progress and eventual success in dismissing McKinney's felony charge in exchange for a $3,000 payment to a Commonwealth's Attorney referred to as

-15-

"David."[2] And, in conformity with the substance of the May 22, 2014 recordings,

the appellees also presented the following:

[2] The two recordings last only a few minutes each. The first begins at approximately 1:11 p.m., and the exchange was in relevant part as follows:

> HARDIN: How you doing?
> ASST. PROSECUTOR: Is this on McKinney?
> HARDIN: What do you want me to do?
> ASST. PROSECUTOR: Is this the total?
> HARDIN: Do you want me to run it through my escrow account and bring you over a check today?
> ASST. PROSECUTOR: Yeah. Or – well, that would be to our office.
> HARDIN: Yes, that's what I'm saying, (inaudible) gave that –
> ASST. PROSECUTOR: Okay. Yeah. You'd write it to our office and then – and then take it over there. You can.
> HARDIN: Okay.
> ASST. PROSECUTOR: Or –
> HARDIN: I mean, I just wanted to—I mean—
> ASST. PROSECUTOR: So is that the total?
> HARDIN: *Yes, that was the total amount that we agreed on for the dismissal.*
> ASST. PROSECUTOR: David's still here if you want to—
> JUDGE: Who?
> HARDIN: *Thomas McKinney. We were going to dismiss it.*
> JUDGE: You were?
> ASST. PROSECUTOR: Will you find David? I think he's in there.
> HARDIN: Sure.
> JUDGE: (Inaudible).
> HARDIN: I was just—we have a problem with the check being in my name versus the Commonwealth or—
> ASST. PROSECUTOR: Yeah (inaudible). Talk with David.
> HARDIN: But I have the check.
> ASST. PROSECUTOR: Okay. Because I wasn't sure it was going to be dismissed. I mean, it's your guy's deal, so make sure.

(Emphasis added.) The second recording, which began at approximately 2:25 p.m., provided the following relevant exchange:

> JUDGE: Call Mr. McKinney, Jr. I wonder whatever happened to my old buddy Francie McKinney. He was here forever. Hell, he was just making a living off of (inaudible) and Social Security at one time. (Inaudible) Francie. (Inaudible) settle down. Rick.
> HARDIN: How are you doing, Judge?

-16-

- A May 21, 2014 check, drawn from McKinney's expense account at "Dream House Real Estate," made payable in the amount of $3,000 to "Rick Hardin";

- A slip indicating Hardin deposited McKinney's check into an account at The Cecilian Bank on May 27, 2014;

- A May 27, 2014 check from Hardin Law Office, LLC, and from its account at The Cecilian Bank, made payable in the amount of $3,000 to "Commonwealth Attorneys Office" with the memo line providing, "Thomas McKinney";

- A June 9, 2014 check 2530 from "David Williams Commonwealth Attorney," from a Bank of Clarkson account, payable in the amount of

---

JUDGE: Fine as frog hairs as they always (inaudible). What's this on? Let's see. Is your man here?
HARDIN: Yeah. I mean, Dave—*Dave told him to basically go on home. We're doing agreed order to dismiss the case. I got the $3,000 check in my pocket.*
JUDGE: Oh, that was the—we had it set—I got it.
HARDIN: Yes, your Honor. And I just need to turn it into my escrow account, write them a check—
JUDGE: (Inaudible).
HARDIN: —after it clears.
JUDGE: I got you.
HARDIN: Yes, your Honor. Do you want to just keep it active for two weeks while—
ASST. PROSECUTOR: Yeah.
HARDIN: —we get the order going?
ASST. PROSECUTOR: Uh-huh.
JUDGE: I recall which one it is now. I suddenly recall.

(Emphasis added.)

-17-

$3,000 to "Kentucky Neighborhood Bank" with the memo line providing, "CW vs. Thomas McKinney"; and

- A June 10, 2014 letter bearing the official letterhead of "The Office of David M. Williams Commonwealth's Attorney," and addressed to "Kentucky Neighborhood Bank Attn: Matt Mardis." It lists as the subject, "RE: CW vs. Thomas McKinney Meade Co Case No. 13-CR-00021," and provides in relevant part:

> Dear Mr. Mardis:
>
> Please find enclosed check no. 2530 in the amount of $3,000.00 for payment from Thomas McKinney in the above styled case. If you have any questions, please feel free to contact me.

In sum, this evidence overwhelmingly and unequivocally demonstrates McKinney's charges were dismissed as the result of a compromise. Which, in turn, leads to point (3). Despite acknowledging he paid his attorney $3,000 and that his attorney apparently paid $3,000 to the Commonwealth's Attorney to compromise his criminal matter, McKinney argues – as set forth in his post-remand affidavit – that *he* never knowingly paid KNB any money and never actually authorized his attorney to compromise his criminal matter.

This argument lacks merit for two reasons. First, it is disingenuous. *See supra*, Note 1. Second, despite McKinney's self-serving averments regarding Hardin's actual authority to bind him to what was apparently an agreed judgment

effectuated over five years ago, the circuit court committed no error in summarily

determining McKinney was nevertheless bound. Indeed, it cannot be contested –

considering what is set forth above and the ultimate dismissal *with prejudice* of

McKinney's criminal charge – that the Commonwealth detrimentally relied upon

Hardin's purported compromise authority. *See*, *e.g.*, *Clark v. Burden*, 917 S.W.2d

574, 576-77 (Ky. 1996), explaining in relevant part:

> If it should be determined that third parties who may be
> dealing with such attorneys would be substantially and
> adversely affected by unauthorized attorney settlements,
> then the client employing the attorney should be bound.
>
> . . .
>
> [T]he client must be charged with responsibility for
> having employed an attorney who failed to observe the
> requirements of fidelity to the client's wishes. That point,
> we believe, is when the rights of innocent third parties
> are adversely affected.

In short, we have reviewed the circuit court's disposition of

McKinney's malicious prosecution claims against the appellees. We discern no

error.

## 2. Outrage

In his complaint, McKinney outlined his "outrageous conduct" claim

against the appellees by incorporating all of the allegations he had already set forth

in his malicious prosecution, negligence, and defamation claims, and then adding:

"The conduct of Defendants as above described constitutes outrageous conduct on

the part of Defendants, which conduct damaged Mr. McKinney, entitling him to an award of damages against Defendants, compensatory and punitive." The circuit court dismissed McKinney's claims in this respect after observing that "outrage" or "intentional infliction of emotional distress" (IIED) claims are unavailable where "emotional distress damages are already available through McKinney's traditional tort claims of malicious prosecution and defamation." On appeal, McKinney argues in relevant part as follows:

> Here however, it is quite clear Coleman intended to cause extreme emotional distress when he wrote the letters threatening to proceed with criminal prosecution of Mr. McKinney[.]
>
> . . .
>
> Mr. McKinney clearly alleged in the Verified Complaint that the actions of Coleman and his co-defendants were *willful, oppressive, malicious and undertaken deliberately for the purpose of damaging him* – and in fact those actions did damage him when he charged [sic] with committing crimes he did not commit and was originally indicted.
>
> . . .
>
> Based on false information furnished to the authorities, Mr. McKinney was charged with a crime which was held over his head for over a year, indicted and deprived of his civil rights, based on information that was completely untrue.

The appellees argue – and we agree – that the tort of outrage or IIED could not lie under the holding in *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky. App. 1993). In *Rigazio*, this Court held:

> [W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended *only* to cause extreme emotional distress in the victim, the tort of outrage will not lie.

*Id*. at 299 (emphasis added). This Court noted the historical role of the tort of outrage, referring to it as a "gap-filler" that provides "redress for extreme emotional distress in those instances in which the traditional common law actions did not[.]" *Id*. at 298-99. Such a conclusion was based on Kentucky's adoption of the Restatement (Second) of Torts (1965) § 46, Comment a., which explains:

> [The tort of outrage] creates liability only where the actor intends to invade the interest in freedom from severe emotional distress. The fact that the actor intends to invade some other legally protected interest is insufficient to create liability where the only effect of his act is the creation of emotional distress[.]

*Rigazio*, 853 S.W.2d at 298. *See also Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (adopting the Restatement definition of outrageous conduct causing severe emotional distress).

In the case at bar, McKinney did not allege the appellees intended to invade his right to freedom from emotional distress.[3] Rather, the facts pled allege that the emotional distress stemmed from alleged malicious prosecution and defamation. Consequently, McKinney's complaint did not support an independent action for outrageous conduct. We discern no error.

## 3. Defamation

With respect to its dismissal of McKinney's defamation claims, the circuit court held as follows:

> A libel or slander claim must be brought within one year after the cause of action accrued. KRS § 413.140(1)(d). Further, "it is the publication of the alleged libelous matter that causes the defamation or injury thus commencing the running of the one-year statute of limitations." *Caslin v. General Electric Co.*, 608 S.W.2d 69, 70 (Ky. App. 1980). Here, the publication of the alleged libelous matter was, at the very latest, when McKinney was indicted by the Meade County Grand Jury on February 4, 2013. The complaint was filed on April 1, 2015, more than a year after the indictment. Therefore, McKinney's defamation claim is barred by the statute of limitations.

In his brief before this Court, McKinney argues the circuit court erred in dismissing his defamation claims for the following reasons:

---

[3] To the extent his complaint ascribed any motive to the appellees regarding their alleged infliction of his emotional distress, McKinney stated in Paragraph 21, "The prosecution of Mr. McKinney by the Defendants was undertaken to extort and extract money from Mr. McKinney and to gain an advantage in what should have been a civil matter and the actions of Defendants in that regard was fraught with malice, and as a direct and proximate result thereof, Mr. McKinney was damaged, entitling him to an award of damages against Defendants."

Mr. McKinney submitted in the record documents indicating the publication of slanderous information by the Appellees continued, *e.g.*, Coleman wrote Mr. McKinney's counsel on November 6, 2014. (TR 114) In addition, if as Appellees maintain Mr. McKinney was guilty of crimes and the Criminal Case was not dismissed in Mr. McKinney's favor, that dismissal did not take place until June 23, 2014. As of that date, as well as in November of that year, it is quite clear Coleman was standing by his statements to the effect Mr. McKinney was a thief. Since the action was filed on April 1, 2015, it was timely and thus, summary judgment on this issue was inappropriate as well and reversal is appropriate.

As to McKinney's assertion that he "submitted in the record documents indicating the publication of slanderous information continued," there is a reason why the circuit court did not address this point regarding the *singular document* McKinney is referencing (*i.e.*, the "November 6, 2014 letter from Coleman to his counsel"). Namely, McKinney did not raise any argument regarding this letter in his response to the appellees' motions for summary judgment. Accordingly, he cannot raise any such argument here. *See Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky. 2011), *abrogated on other grounds by Nami Resources Co. L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018) ("It is an unvarying rule that a question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court.").

Also, McKinney's contention that the limitations period associated with his claims of defamation was tolled pending the outcome of his criminal

proceedings is without merit. As the circuit court correctly noted, publication of the allegedly defamatory matter causes injury, thus commencing the running of the one-year statute of limitations. *Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. App. 1980). The dismissal of McKinney's criminal charge was not essential to proving the elements of McKinney's defamation claims.[4] Therefore, the trial court properly dismissed his defamation claims as untimely.

## 4. Negligence

McKinney asserted negligence claims against the appellees which, in his complaint, simply incorporated his allegations underpinning his malicious prosecution claims. Moreover, like malicious prosecution, he asserted his negligence claims did not commence until his underlying criminal proceeding had concluded. In their respective motions for summary judgment, the appellees argued McKinney's negligence claims failed for several reasons, including the applicable statute of limitations and because no common law duty capable of supporting a negligence claim was owed to McKinney under the circumstances. Below, the circuit court disposed of McKinney's claims on limitations grounds.

---

[4] In *Dunn v. Felty*, 226 S.W.3d 68 (Ky. 2007), the Kentucky Supreme Court held that the one-year statute of limitations for false imprisonment accrued when the plaintiff was released from the allegedly illegal restraint, not upon the favorable termination of the criminal proceedings. *Id*. at 72. The Court noted that, if there are pending criminal proceedings, the civil claim would need to be stayed until the criminal case is ended. *Id*. at 74. Likewise, a defamation claim would also need to be brought within one year of publication despite any pending criminal charges arising from those matters.

-24-

However, it is this Court's prerogative to affirm on any ground supported by the record,[5] and we do so because no common law duty was owed relative to McKinney's negligence claims.

Generally speaking, "To recover under a claim of negligence in Kentucky, a plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages." *Lee v. Farmer's Rural Elec. Co-op. Corp.*, 245 S.W.3d 209, 211-12 (Ky. App. 2007). In the context of this tort, as indicated, McKinney believes an attorney and his client owe the individuals they sue or press criminal charges against a common law duty to not file frivolous or malicious lawsuits or charges.

With that said, roughly the same argument was made, and rejected, in *Hill v. Willmott*, 561 S.W.2d 331, 335 (Ky. App. 1978), where we explained in relevant part:

> The key to the protection of the basic legal concept
> allowing free access to the courts is the element of
> "probable cause" in an action for malicious prosecution.
> Any less demanding standard would make the attorney
> ". . . an insurer to his client's adversary that his client will
> win in litigation." *See Tool Research & Engineering
> Corp. v. Henigson*, 46 Cal.App.3d 675, 120 Cal.Rptr. 291
> (1975). To allow a party to bring a negligence action

---

[5] "[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009) (citation omitted).

against the adverse attorney would have a chilling effect on the number of meritorious claims filed and this cannot be tolerated under our system.

Applying the foregoing principles to the case at bar, it is readily apparent that Willmott [*i.e.*, the attorney] did not owe the alleged duty urged by Hill [*i.e.*, the non-client defendant/appellant] nor was the appellant an intended beneficiary of Willmott's services. Willmott's alleged failure to investigate the facts and law prior to the filing of the suit in his name would have been material as to the question of "probable cause" in a malicious prosecution action if such had been pleaded. However, his alleged failure to investigate was not a duty owing to Hill and as such does not constitute a cause of action by him.

Because there exists no reason to deviate from *Hill*, we accordingly find no error in the circuit court's decision to dismiss these claims, either.

**5. Civil conspiracy**

Lastly, McKinney asserted "civil conspiracy" claims against these appellees, which the circuit court likewise dismissed. In this respect, we likewise discern no error. Civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort. *See Davenport's Adm'x v. Crummies Creek Coal Co.*, 299 Ky. 79, 184 S.W.2d 887, 888 (1945). Here, McKinney's claims of civil conspiracy have no tort to be based upon; as discussed, the circuit court properly dismissed his malicious prosecution, outrage, defamation, and negligence claims. Therefore, McKinney's civil conspiracy claims cannot survive as a matter of law.

## CONCLUSION

In light of the foregoing, we AFFIRM.


ALL CONCUR.


BRIEFS FOR APPELLANT:

David B. Mour
Louisville, Kentucky

BRIEF FOR APPELLEE, JERRY M.
COLEMAN:

Edward H. Stopher
Todd P. Greer
Louisville, Kentucky

BRIEF FOR APPELLEES,
KENTUCKY NEIGHBORHOOD
BANK, INC. AND MATT MARDIS:

Benjamin Riddle
Louisville, Kentucky